J. M. BURNETT, as Tax Collector, W. B. GRAY, T. C. HAMMOND and JAMES G. YEATS, ELDREDGE & CO., W. L. SLAYTON & CO., W. R. COMPTON & CO., *Appellants,* v. C. W. GREENE & ROBERT A. MEIER, *Appellees.*

En Banc.

Opinion filed May 29, 1929.

Petition for rehearing denied July 9, 1929.

1008

*E. E. Graves, A. G. Turner, H. S. Philips* and *O. K. Reaves,* for Appellant;

*Henry E. Williams* and *George C. Bedell,* for Appellees.

ELLIS, J.—This is an appeal from an injunctional order entered November 19, 1928, temporarily restraining J. M. Burnett, Tax Collector of Hillsborough County, from collecting or attempting to collect the 1928 annual drainage taxes levied against the lands of complainants and other property owners in Interbay Drainage District, also known as Southwest Tampa Storm Sewer Drainage District, appearing in "Drainage Tax Book, Interbay Drainage Tax Book, Interbay Drainage District, Hillsborough County, Florida for the year 1928" or "Drainage Tax Book, Southwest Tampa Storm Sewer Drainage Tax Book, Southwest Tampa Storm Sewer Drainage District, Hillsborough County, Florida, for the year 1928."

There are three general assignments of error two of which attack the order directly and the third is directed to alleged errors of the Court in admitting or rejecting "testimony." Under the last assignment are placed forty-eight specific assignments each dealing with some ruling of the Chancellor in rejecting or admitting evidence.

The suit was begun by C. W. Greene of Hillsborough County, Florida, and Robert A. Meier of Philadelphia County, Pennsylvania, against J. M. Burnett as Tax Collector of Hillsborough County, and W. B. Gray, T. C. Hammond and James G. Yeats as Supervisors of the Drainage District, and Eldredge & Company of New York, W. L. Slayton & Company of Toledo, Ohio, and W. R. Compton & Company of St. Louis, Missouri.

The bill alleges that the complainants are owners of certain lands lying within the district; that the lands are high, vacant and unoccupied and cannot be benefitted

directly or indirectly by drainage improvements, but such lands were included in the district solely for the purpose of deriving revenue from the levy and collection of the drainage taxes thereon for the benefit of other lands subject to be improved by drainage; that certain other lands owned by the Atlantic Land & Improvement Company, a subsidiary of the Atlantic Coast Line Railroad, which were directly benefitted by the drainage district were by agreement between the promoters of the district and the Atlantic Coast Line Railroad arbitrarily excluded from the boundaries of the district; that other lands owned by the said railroad company amounting to about 115 acres were released from assessment of drainage taxes by agreement between that company and the promoters of the district, in which the promoters agreed that without regard to benefits no assessment or drainage taxes would be levied on the lands; that such agreement was reached after the filing of a petition for the creation of the district and the filing of valid objections by the railroad company to the formation of it; that after the agreement was reached, however, and after the time allowed for filing objections by other property owners the railroad company in consideration of the agreement reached between it and the promoters withdrew its objection.

It is alleged that the Supervisors have levied a total drainage tax or assessment against the lands of Greene amounting to $22,734.50 and against the lands of Meier a tax amounting to $4,356.25 and have levied annual drainage taxes for the years 1924, 1925, 1926 and 1927 upon the lands and intend to do likewise for the year 1928 and for each of the succeeding twenty-five years; that the Supervisors have prepared the tax levy and entered it in the Drainage Tax Record books and the same has been filed in the office of the Clerk of the Court; that the County

Tax Collector has refused to receive from complainants the state and county ad valorem taxes until they pay the drainage tax levied upon their lands. He has assumed a like stand with all other owners of land lying within the district.

The bill rests upon the proposition that the drainage assessments or tax and the annual tax levies and the record of them are void and constitute a cloud upon complainant's lands and those of other owners of lands within the district, and that the Supervisors intend to foreclose the alleged tax liens and sell the lands of the complainants.

The bill continues at some length with allegations attacking the validity of the organization of the district on many grounds, some of which are the irregularity of the original petition filed under Art. I, Chap. III, Title VII First Division Rev. Gen. Stats.; the lack of the signature of the Board of Drainage Commissioners; the lack of the requisite number of owners of land; the lack of the acreage that should have been represented; the signing of the petition ostensibly by corporations but in fact by officers with no proper corporate authority for doing so; the omission of the names of over thirteen hundred owners of land in the district and the fraudulent appending to certain signatures figures indicating the acreage owned so as to deceive the court by representing that a majority of the owners of the acreage had signed the petition when in fact they had not.

It is also alleged that an owner of lands within the district who filed valid jurisdictional objections to the formation of the district withdrew the objections after the time for filing objections by other owners had passed, and in such action, the person so objecting was induced to do so by an unlawful agreement with one of the promoters of the district and the chief engineer in which it was agreed

that any assessments made against the lands of the petitioner would be paid in consideration of the withdrawal of the petition.

At this point the following allegation is made:

That on the 22nd day of June, A. D. 1923, the Court, without jurisdiction of the subject matter or of the parties, entered a decree establishing said district; that said decree is recorded in Chancery Order Book—— page——; that prior to the entering of said decree there had not been first obtained the written approval or consent of the owner or owners of a majority in acreage of the lands within said district; that a fraud was imposed upon said Court in obtaining said decree by misrepresentations in said petition as aforesaid; that aforesaid withdrawal of objections by said objector was obtained for the purpose of perpetrating, and did perpetrate, a fraud upon the Court by preventing said Court from learning of the jurisdictional defects in said petition. That said Court was without jurisdiction to enter the said decree establishing said district, and that said decree was obtained by fraud and imposition upon the Court, and that the said decree is null and void and of no effect.

The bill then sets out in detail the proceedings which began in March 1924, by which a plan for the reclamation was proposed and adopted; contracts made for the work and bonds issued and sold with which to accomplish it; a revision of the plans of reclamation and the issuing of more bonds in a greater sum by three times the amount of the first issue. The first issue of bonds being $749,000.00 and the second $2,338,000.00.

The bill then alleges a state of facts which the complainants denounce as a fraud upon the tax payers con-

sisting of unlawful agreements and combinations between a company of bond buyers, certain contractors, who desired the contract for executing the work, and the Supervisors of the district and another person named Ayala described as a bond buyer who later came into the transaction, whereby the bond buyers would acquire the bonds at the price of 95 cents on the dollar ostensibly, but the contract for the work would be let to the contractors at an excessive price which would enable them to return to the bond buyers seventeen cents on the dollar for the bonds purchased thereby reducing the price of the bonds to seventy-eight cents on the dollar, whereas the law forbade their sale at less than ninety-five cents; that such scheme resulted in paying to the contractors $2,005,916.54 for materials and labor used in the construction work of a value less than $1,150,000.00.

The bill presents the proposition supported by suitable allegations that all the bonds issued and sold by the district are non-negotiable because of provisions contained in the statutes under which they are issued, viz: Sec. 1138 Rev. Gen. Stats., Sec. 4677 of the same statutes and Secs. 1098 to 1152 same statutes, and amendments thereto, Secs. 1451 to 1522 Comp. Gen. Stats. and the express provisions of Sec. 1107 Rev. Gen. Stats., now Sec. 1460 Comp. Gen. Stats.

That the alteration of the original plan of reclamation filed March 15, 1924, was without authority of law because no notice of such revision was given to owners of lands in the district; that by reason thereof the assessments made and set forth in the revised plan were illegal and the taxes levied and bonds issued for the payment of the improvements were illegal and void.

It is alleged that the original plan of reclamation provided for open drains and ditches which were estimated

to cost $749,000.00 whereas the amended plan provided for concrete reinforced pipes, concrete flumes and culverts which would necessitate the expenditure of $3,000,000.00; that the formation of the first plan exhausted the power of the Supervisors and the adoption of the amended plan was void because it was without a court order made on petition properly formulated and presented; that the amended plan did not provide for the character of drainage construction contemplated by the statute for wild and uncultivated lands but on the other hand was suitable for urban conditions and constituted a regular city storm drainage project.

It is alleged that the original petition for the formation of the district is lost and has not been on file in the clerk's office for several years; that an order was obtained in April, 1927, changing the name of the district.

It is alleged that the validation proceedings of the two bond issues were void because; first, the statutes do not authorize a drainage district formed under the general drainage laws to sue or be sued except those provisions relating to proceedings for the foreclosure of drainage liens; second, the statutes do not contemplate proceedings for the validation of the district bonds; third, the petitions for validation were defective because they failed to set out essential matter required by the statutes; fourth, that the question whether the district was legally organized was not a proper subject of inquiry in such proceedings; fifth that the proceedings if valid at all bound no one but the State of Florida; sixth, the bond issues were not the same; seventh, the facts were not the same; eighth, the decree establishing the district being void, the decree validating the bonds being void, there is no estoppel to challenge the authority to levy assessment of taxes or to issue bonds against interested parties; ninth, the doctrine of estoppel

does not operate to confer authority and as the organization of the district was void the property owners whose property is affected by the attempted assessment are not estopped to challenge it. Other reasons are given in seven other paragraphs which may be grouped as an attack upon the validation proceedings because of imperfections in the petition and decree of the court as to the terms of the proposed bonds and lack of the Court's jurisdiction to entertain the petition.

It is alleged that in making the assessments against the property in the district the Commissioners did not view the premises and determine the value of the lands within or without the district to be acquired for purposes of the district and the amount to be assessed for benefits, but on the other hand all such matters were left to the chief engineer of the district.

There follows a list of lands and the amounts assessed against them which are alleged to exceed the value of the lands assessed.

The bill, which is very lengthy, concludes with a summary of its attacks upon the legality of the formation of the district; the validity of the bond issues and the assessments, which we set forth here in the words of the pleader as follows:

That both the petition for the establishment of, and the decree purporting to establish, Interbay Drainage District are void for uncertainty of description of the boundary line of said district.

That the taxing authority attempted to be conferred upon the Board of Supervisors of drainage districts created under Art. I, Chap. III, Title VII, First Division of Rev. Gen. Stats. of Florida, is not limited by legislative provisions and exceeds legislative authority.

That the issuance of the Two Million Three Hundred and Thirty-eight Thousand Dollars ($2,338,-000.00) of bonds and the levy and assessment of taxes to pay said bonds and interest thereon upon the property in Interbay Drainage District is a clear and palpable abuse of the taxing power and its effect is to deprive the owners of said property without due process of law.

That your orators and the other property owners in Interbay Drainage District have been, by the aforesaid creation of Interbay Drainage District and aforesaid levy of drainage assessments and taxes thereon and aforesaid issuance and validation and sale of bonds, deprived of their property without due process of law.

That the issuance of drainage bonds in excess of Three Million Dollars ($3,000,000.00) and the levy of drainage assessments and taxes upon the lands in Interbay Drainage District to pay said bonds is a clear and palpable abuse of the power of taxation for local public improvements and is unauthorized, and by such levy and assessments your orators and other property owners in said drainage district have been deprived of their property without due process of law.

Your orators are advised and believe, and, therefore, aver that the Interbay Drainage District or Southwest Tampa Storm Sewer Drainage District assessments are, by the laws of Florida, *prima facie* only of the validity of such assessments, and that said presumption may be overcome by proof of their invalidity.

Your orators are advised and believe and, therefore, aver that the general drainage statute of the State of Florida by express terms, provides that no ''informality or irregularity in the proceedings leading up to

drainage assessments shall constitute a valid defense thereto,'' and that therefore any jurisdictional defect in the essential proceedings culminating in such assessment may be availed of as a defense thereto, or in an attack thereon.

That each of the defendants to this suit claims an adverse right, title, or interest in and to, or claim upon, the real estate in this bill described, the exact nature thereof being to your orators unknown; that your orators are entitled to bring and prosecute this bill of complaint on behalf of themselves, and all other persons similarly situated, to a final decree for the purpose of having determined the said adverse estate, right, title, interest or claim in and to, or claim upon, said real estate which each of the said defendants claims, having each of the defendants disclose the nature, character and extent of said adverse interest, right of title which he claims in and to said real estate, and for the purpose of quieting the title of your orators in and to the said premises; that the adverse estate, right, title, or interest which the defendants claim in and to the above described real estate interferes with your orators, and all other persons similar situated, in selling and disposing of the same ''at the fair and just market value of said premises; that neither of the said defendants is the owner of the above described real estate, or any part thereof, and each of said defendants is without any right, title, or interest in and to, or claim upon, the said real estate, or in or to any portion thereof, and neither of said defendants has ever had any right, title or interest in and to said premises, or any part thereof.''

The prayers are that the defendants may be required to discover the nature of their adverse right claimed to the

premises; that the decree establishing the district be declared to be void and a cloud upon the complainants' title to the lands; that the assessments be declared to be invalid and a cloud upon complainants' title; that the Drainage Tax Books for the years 1924, 1925, 1926, 1927 and 1928 be declared invalid; that Burnett, the tax collector, be restrained from collecting the 1928 drainage taxes, for a temporary injunction against him and for general relief.

The Supervisors answered the bill in which they denied the alleged irregularities in the organization of the district; the adoption of the plans of reclamation and issue of bonds and averred a compliance with all statutory requirements, denying the lack of jurisdiction of the court to entertain the proceedings for the organization of the district and denying all irregularities charged in the matter of the bond issue and denied the alleged fraud upon the property owners involved in the contract for the work let to Nixon and Phillips, contractors, and denying that the commissioners failed to view the land for assessment.

A demurrer to the bill was also interposed which rests upon many grounds. The general one of a want of equity; that the complainants' remedy is by *quo warranto;* estoppel; laches; that the bill is a collateral attack on the decree of the court establishing the district; the allegations of fraud are mere conclusions of law; multifariousness; that the bill shows that all questions presented as a basis for relief have been adjudicated by the court in the proceedings for the establishment of the district and the validation of the bonds; that the bonds issued are negotiable and the complainants are estopped from raising any question as to their validity.

No order seems to have been made upon the demurrer. It was incorporated in the answer and deferred to the hearing upon the testimony.

A great deal of testimony was taken and documentary evidence submitted.

The propriety of such a lengthy statement of the pleadings may be doubtful, but it seemed to be necessary to give the merest outline of the principal questions presented in this litigation. The evidence received is abundantly sufficient to sustain all the material allegations of fact contained in the bill of complaint. Upon that point therefore there can be no ground for disturbing the chancellor's order. See Gove v. Nautilus Hotel Co., 68 Fla. 490, 67 So. R. 112; Wainwright v. Connecticut Fire Ins. Co., 73 Fla. 130, 74 So. R. 8; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 So. R. 216; Hill v. Beacham, 79 Fla. 430, 85 So. R. 147; Simpson v. First Nat. Bank of Pensacola, 74 Fla. 539, 77 So. R. 204; Edney v. McCaskill, 90 Fla. 335, 105 So. R. 821.

A drainage district was proposed to be established in a territory embracing an area of about 13016 acres lying between Hillsborough Bay on the east and Old Tampa Bay and Tampa Bay on the west and south. An area of about eighteen hundred acres surrounding and including Port Tampa City was excluded from the district and a like area to the south and southeastward of the district bordering on Tampa Bay and Hillsborough Bay was excluded.

The assignments of error attacking the rulings of the chancellor upon the admission and rejection of evidence, forty-eight in number, are not argued. We shall treat them under the rule, therefore, as abandoned. See Mitchell v. Mason, 61 Fla. 692, 55 So. R. 387; Seaboard Air Line Co. v. Nims, 61 Fla. 420, 54 So. R. 779.

The tax complained of in the bill has been levied by the Supervisors, so they aver, under authority of the proceedings whereby the Drainage District was established. Those proceedings were taken under the provisions of Section 1098-1152 comprising Chap. III, Art. I, Title VII,

of Rev. Gen. Stats. 1920. The proceedings were instituted by petition made and signed by the owners of the acreage lying within the proposed drainage area and filed in the Circuit Court for Hillsborough County in March, 1923.

The bill alleges that the petition after being filed in the Clerk's office was lost; that it was not signed by a majority of the owners or the owners of a majority of the acreage of the lands to be included in the district; that the lands described in the petition were not confined to a contiguous body of wet or overflowed lands or lands subject to overflow; that the greater portion of the lands of the complainants were high and dry, vacant, unoccupied and cannot be benefitted directly or indirectly by drainage improvements and that the lands described in the petition as constituting the proposed drainage area did not consist of a contiguous body of wet or overflowed lands or lands subject to overflow and that such lands of the complainants were included within the drainage district solely for the purpose of deriving revenue from the assessment and collection of drainage taxes thereon for the benefit of other lands subject to be improved by drainage.

When the petition was filed and notice had been given objections were filed by persons owning lands within the proposed area in which it was pointed out and made known to the court that neither a majority in number or acreage of the holders of the lands signed the petition and that the lands embraced within the proposed district was not a contiguous body of wet or overflowed lands or lands subject to overflow and that other fundamental or essential requirements of the law were not observed; that such objections were later withdrawn by the objectors when it was too late under the statute for others to interpose objections and that such withdrawals were made under agreements

either that the land of the objectors would be omitted from the area or no tax assessment would be levied against it.

The defendants meet the cause of the complainants by saying that the attack on the decree establishing the district is collateral; the order of the court is valid and remains so until reversed for error and the complainants are bound by it; that the bonds issued are negotiable and the complainants are estopped by laches from attacking them.

The complainants reply that the act under which the District was attempted to be established is void because it undertakes to vest in the circuit judge the power and duty of discharging a legislative and not a judicial function; that the court had no jurisdiction to entertain the petition because it did not meet the jurisdictional prerequisites prescribed by statute in consequence of which the decree establishing the district was void; that there is no authority of law for the validation of the bonds of the district nor were they in terms in accordance with the decree of validation and that as to the bond issue it is held by purchasers who acquired it with knowledge of its invalidity and in fraud of the district and that no bona fide purchasers, if any there can be, are before the court.

We will consider the majority question first, namely: the constitutionality of the act under which the district was alleged to have been established. If that act is in conflict with the limitations upon legislative power express or implied contained in the Constitution it will be unnecessary to proceed further because if the foundation of the structure is bad and must fall the entire superstructure must go with it.

Under the Constitution the powers of the government of this state are divided into three departments: Legislative, Executive and Judicial, and ''no person properly belonging to one of the departments shall exercise any power apper-

taining to either of the others, except in cases *expressly* provided for by this Constitution." (Italics mine). Art. II, Constitution. That a person belonging to the judicial branch may exercise a power appertaining to the legislative branch is not expressly provided for by the Constitution.

Sec. 1098, Rev. Gen. Stats. 1920, constituting the first section of the chapter on the drainage of swamps and overflowed lands and which constitutes the authority for the establishment of the district provides three methods for the formation of drainage districts.

First, by petition signed by the Board of Drainage Commissioners of the State; second, by a petition signed by a majority in *numbers* of the holders of any contiguous body of wet or overflowed lands or lands subject to overflow situate in one or more counties in the state; third, by a petition signed by a majority in *acreage* of the holders of such lands. In any case the petition is required to be filed in the office of the clerk of the circuit court of the county in which the lands or the greater portion of them are situate.

The Board of Drainage Commissioners of the State, referred to in the above section, was a board of drainage commissioners undertaken to be created by Chapter 5377, Laws 1905, which act was declared to be unconstitutional by the Federal Court of the Southern District of Florida and afterwards amended by Chapter 5709, Laws 1907, in which a drainage district was "specifically indentified and named by a public act of the Legislature." See Richardson-Kellet Co. v. Kline, 70 Fla. 23, 69 So. R. 203. That board consisted of the Governor, Comptroller, State Treasurer, Attorney General and Commissioner of Agriculture and their successors in office.

That act was superseded by Chap. 6456, Acts of 1923, and amendments thereto in which the same State officials

and their successors in office were constituted the govern-
ing board of "Everglades Drainage District," and the
board is designated as "the Board of Commissioners of
Everglades Drainage District."

The above mentioned acts of the Legislature constitute
part of the legislative history of the development of the
"Everglades Drainage District," embracing the adjacent
territory north, east and west of Lake Okeechobee and the
area of swamp and overflowed lands known as the "Ever-
glades" lying south of the lake.

Chap. 6458, Acts 1913, Sec. 1098 et seq., Rev. Gen. Stats.
1920, was an act which in purpose was supplemental to,
rather in aid of, or as the statute declares "alternative to"
the State policy for the reclamation of swamp and over-
flowed lands for sanitary or agricultural purposes or for
public health, convenience, or welfare. The act was de-
clared to be remedial in character and was not intended to
repeal or affect any other drainage laws.

An order of the circuit court is necessary to create a dis-
trict under the provisions of the law and the power may be
invoked only upon a petition of land owners who own lands
within the area intended to be incorporated within the dis-
trict (assuming for the purposes of this discussion that the
so-called Board of Drainage Commissioners of the State is
non-existent).

We are of the opinion that a jurisdictional prerequisite
to the exercise of the power by the circuit court is a petition
filed in the circuit court signed by a "majority, either in
numbers or acreage, of the holders" of the wet or over-
flowed lands lying within the proposed district. There is
no special significance in vesting the power in the "circuit
court" in which the petition has been filed to determine
whether the district would be to the advantage of the land
owners or in the interest of public health because such

power is in no sense an increase of judicial power possessed by the circuit courts under the Constitution. See Secs. 1-2, Art. V, Constitution.

The judicial power of the State is vested in certain courts enumerated in Sec. 1 of Art. V and that power is distributed between the courts named in other sections of the same article. In enumerating the subjects over which the circuit courts shall have jurisdiction, Sec. 11 provides ''and of such other matters as the Legislature may provide.'' But such other matters must be justiciable matters; that is, such matters as are capable of being adjudicated by the judicial power, because Art. II prohibits any person belonging to one department from exercising any power appertaining to either of the other departments. The judicial power of the State extends to all controversies justiciable in their nature and to the parties to which or the property involved in which may be reached by judicial process. All the judicial power which the State is capable of exercising is vested by the Constitution in the courts enumerated in it. See Kansas v. Colorado, 206 U. S. 46, 51 L. Ed. 956.

It would seem therefore that if the power to create a local drainage district is either a legislative or executive power such matter could not be vested in a person belonging to the judicial department.

The power to create drainage districts is a legislative function. The power appertains to the legislative department of government in the interest of public health, convenience and welfare. See Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47, 19 C. J. 606, and authorities cited in note 15.

In the Lainhart case, *supra*, in which the act under consideration in that case, Chap. 6456, Acts of 1913, as amended by Chap. 6957, Acts of 1915, was attacked as a local measure and obnoxious to Sec. 20, Art. III of the Constitution prohibiting local measures for the assessment and

collection of taxes for State and county purposes, the court said, speaking through Mr. Justice Love, Circuit Judge, acting in place of Mr. Justice Ellis, disqualified: "It must be borne in mind that the drainage district in question is established directly by the Legislature of the State, its creation not being delegated to local boards, commissions or other instrumentalities; the assessments or charges upon the lands are fixed, determined and imposed directly by the Legislature and are *not referred* to the *judgment* of any board or body to be ascertained and determined." (Italics mine.)

In the case of Bannerman v. Catts, 80 Fla. 170, 85 So. R. 336, the Court, speaking through Mr. Justice Wilson, Circuit Judge, said: "It is too well settled to admit of any argument that the drainage and reclamation of swamp and overflow lands are a proper exercise of legislative authority."

An analysis of the act under which the "Interbay Drainage District of Hillsborough County" was sought to be created reveals:

*First,* That it is a general act for the purpose of providing for the drainage of swamp and overflowed or wet lands in local districts; *second,* the assessments provided for are special assessments for local benefits; *third,* the purpose of the act is to create a "public agency" in which the power shall be vested to execute the plans of drainage in the interest of public health or the public welfare and to levy the assessments for benefits to enable the plans to be executed; *fourth,* that the legislative determination of the public necessity for the establishment of a local drainage district, that is to say, whether the power which appertains to the legislative department shall be exercised, is made to depend upon four conditions, namely:

*A.* That a petition for the establishment of such a district

shall be filed in the circuit court in which the lands lie, signed by a "majority, either in numbers or in acreage, of the holders" of the land to be included within the district to be established; *B,* the lands shall be a "contiguous body of wet or overflowed lands, or lands subject to overflow"; *C,* the circuit judge shall hear in a summary manner the objections, if any there be, to the establishment of the district; *D,* upon hearing the objections, "if any have been filed," he "shall be of the opinion that the establishment of the said drainage district and the improvements to be made thereunder will be" either, first, for the "*advantage* of the owners of the real property therein," or, second, "that the same would be in the interest of the public health, convenience or welfare"; *fifth,* in case no objections have been filed the court shall by its order duly entered of record, declare and decree said drainage district a public corporation of the State.

The importance of condition A *under* the fourth item above mentioned is emphasized by a proviso contained in Section 3 of the Act, Sec. 1100, Rev. Gen. Stats. 1920, to the effect: "That no drainage district shall be established or consolidated under any provisions of this article until there shall have been first obtained the written approval or consent of the owner or owners of a majority in acreage of the lands within said district."

Assuming for the sake of argument upon the principle that great latitude should be accorded to the Legislature in the exercise of its proper powers, Stewart v. DeLand-Lake Helen Special Road and Bridge Dist. in Volusia County, 71 Fla. 158, 71 So. R. 42; State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. R. 692; Bailey v. Van Pelt, 78 Fla. 337, 82 So. R. 789; Nabb v. Andrew, 89 Fla. 414, 104 So. R. 591; McNeil v. Webeking, 66 Fla. 407, 63 So. R. 728; Noble v. State, 68 Fla. 1, 66 So. R. 163; Pinellas Park Drainage

Dist. v. Kessler, 69 Fla. 558, 68 So. R. 668; Charlotte Harbor & N. Ry. Co. v. Welles, 78 Fla. 227, 82 So. R. 770; State v. Bryan, 87 Fla. 56, 99 So. R. 327, that Chap. III, Art. I, Div. 1, Title VII, Rev. Gen. Stats., *supra,* is a legislative determination of a system for the drainage of swamp and over-flowed or wet lands, the fact remains that the system is potential only, existing in possibility not in actuality. Its potency, by legislative expression, the verbiage of the Act, the revealed purpose of the law-making power, depends unqualifiedly upon the happening of the events enumerated under the fourth item above mentioned, namely: *B,* the lands to be incorporated in the district proposed to be established must be a "contiguous body of wet or overflowed lands or lands subject to overflow"; *C,* the circuit judge shall hear all objections that may have been filed; *A,* that the petition shall be in writing and signed by a "majority, either in numbers or acreage, of the holders of the land" at least by a majority of the owners in acreage, and *D,* that the judge shall be of opinion either, first, that the establishment of the district will be for the "advantage of the owners of the real property therein," or, second, that it will be "in the interest of the public health, convenience or welfare."

Until these things happen, until they fall into a common action movement or condition, in other words, until they co-ordinate, the legislative will is unexercised, it is potential only.

In our opinion there are three of the conditions required which are illegal and not within the power of the Legislature to impose. The first is that it cannot delegate its power to determine whether the establishment of a drainage district will be in the "interest of public health, convenience or welfare"; second, it cannot establish such a district merely because it will be for the "advantage of the owners of the real property therein," and third, if it is a legisla-

tive function to determine those questions it may not require a person belonging to the judicial department to exercise the power which appertains to the legislative department. The power sought to be conferred is not a judicial power which may be exercised only by courts, because a court is a body in the government for the public administration of justice. Its purpose and sole function is to administer exact justice, as nearly as may be, to all parties before it, not to determine the wisdom of a public measure designed to promote the "public health, convenience or welfare." See Johnston v. Hunter, 50 W. Va. 52, 40. S. E. R. 448.

There are administrative agencies which exercise functions judicial in their nature. It is practically impossible to create an administrative agency which does not possess in some degree judicial functions; but the fact that some bodies possess to some extent judicial powers does not necessarily make such body a court within the meaning of the Constitution. Crawford Co. v. Hathaway, 61 Neb. 317, 85 N. E. R. 303.

In the case of Pinellas Park Drainage Dist. v. Kessler, *supra,* the Act in question was held valid only against the attack which was made upon it that the Legislature was not authorized to empower the board of supervisors of the district to impose or make levies of taxes upon the lands in the district.

The court did not sustain that contention. It merely held that there was no provision of the Constitution requiring special assessments for local benefits by drainage operations to be levied by the county commissioners and that it is within the legislative power to authorize such special assessments to be made by the board of supervisors of an incorporated drainage district as is done by Chap. 6458, Acts of 1913.

The question of the power of the Legislature to organize the district in the manner provided by the statute was not presented or considered.

Now, the statute under which the drainage district was organized vests in the court in which the petition is filed a power which in one case the Legislature may not exercise and in the other a power which it is a legislative function to exercise.

The judge may find that the petition is properly signed yet he may refuse to enter the order because he may be of the opinion that the establishment of the district and the improvements to be made will *not* be in the interest of public health, convenience or welfare; *or* he may find that the petition is properly signed and the establishment of the district will be in the interest of public health, convenience or welfare but *not* for the advantage of the owners of the real property therein and refuse to enter the order for that reason. Or he may disregard the objections which may have been filed to the establishment of the district which denied the proper signing of the petition and enter the order establishing the district if he should be of the opinion that the district would be for the advantage of the owners or in the interest of public health, convenience or welfare, as was done in the instant case upon the theory perhaps that the objections had been withdrawn, although the objections filed challenged the alleged existence of the fundamental conditions which the law requires shall be made to appear before the legislative will operates upon them to the end that a district shall be formed.

The levying of a tax or assessment for local benefits is the exercise of a sovereign power exclusively within legislative authority which it may in a proper case delegate to an agency to execute.

It is universally recognized that upon the division of the

government into three departments the power of taxation is legislative and falls to that branch of the government without special assignment. See Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; Spencer v. Merchant, 125 U. S. 345, 31 L. Ed. 763, 8 Sup. Ct. R. 921; State Board of Tax Com'rs. v. Holliday, 150 Ind. 216, 49 N. E. R. 14, 42 L. R. A. 826.

The purpose for which a tax is levied must be a public one and if it is not for a public purpose it is obviously not for the purpose for which the State is formed and is subject to judicial review. See Lucas County Auditor v. State ex rel. Boyles, 75 Ohio St. 114, 78 N. E. R. 955, 7 L. R. A. (N. S.) 1196; State ex rel. Douglas Co. v. Conrell, 53 Neb. 556, 74 N. W. R. 59, 68, A. S. R. 629, 39 L. R. A. 513; 1 Dillon Municipal Corp. 3 Ed. Sec. 508; Cooley on Taxation, 67; Sharpless v. Mayor of Philadelphia, 21 Pa. St. 147, 59 Am. Dec. 759.

The question what constitutes a public purpose is the difficult problem when the purpose for which the tax is levied lies within a zone the boundaries of which are not clear. The courts may be justified in interposing only when a violation of the principle is clear and the reason for interference cogent. Citizens' Savings & L. Ass'n v. Topeka, 20 Wall. 655, 22 L. Ed. 455; Alfalfa Irrigation Dist. v. Collins, 46 Neb. 411, 64 N. W. R. 1086.

Under the provisions of the Act which constitutes the authority for the establishment of drainage districts a public agency may be formed in which the power to levy and collect taxes is vested, but such agency may under the provisions of the Act exist if in the opinion of the court the district and the improvements to be made will be for the "advantage of the owners of the real property therein" as contradistinguished from the character of the enterprise as one "in the interest of the public health, convenience and welfare."

The Act it would seem thus contains its own seeds of dissolution. Advantage to the owners of the land may exist irrespective of whether the enterprise is for the public health or welfare. If it is in fact for the latter purpose the owners share that advantage in common with the public, so it is evident that there was in the legislative mind a personal or private advantage distinguished from the public health and welfare.

In this view of the case and without discussing the other questions presented we are of the opinion that the injunctional order was correct and it is hereby affirmed.

BUFORD, J., concurs.

TERRELL, C. J., AND WHITFIELD, J., concur in the affirmance.

STRUM AND BROWN, J. J., dissent.

TERRELL, C. J., AND WHITFIELD, J., concur in affirming the order appealed from temporarily restraining the collection of the annual drainage taxes levied upon lands in the Interbay Drainage District, because of the showing of illegality in the proceedings had.

BROWN, J. (dissenting): It appears to me that the bill in this case was in its essence a collateral attack by individuals upon the legal existence of the public corporation—the drainage district—which method of attack is not permissible. *Quo warranto* by the State is the remedy to test such a question. State v. City of Sarasota, 109 So. R. 473; West v. Town of Lake Placid, 120 So. R. 361.

STRUM, J., concurs.