BARNES & JESSUP COMPANY, A CORPORATION, *Appellant,* v. M. V. WILLIAMS AND EUGENE M. PUTNAM, *Appellees.*

1. Under the provisions of Rule 18, Supreme Court Rules, adopted March 2, 1905 (page 11 of such rules prefixed to 51 Fla., 37 South Rep. viii), no objection will be allowed to be taken in the appellate court to the admissibility of any evidence, oral or documentary, found in the record in a chancery cause, unless the record affirmatively shows that the objection thereto was presented to the chancellor, and expressly ruled upon by him in the court below, at or before the final hearing of the cause. Every matter purporting to be evidence,, found copied by the clerk into the record in such cause, will be presumed to have been used in evidence in the court below, unless the record affirmatively shows the contrary.

2. If a complainant in a suit in equity desires to avoid the probative force of a sworn answer, he may do so by expressly

waiving the oath in his bill. Where the complainant fails to do this, an answer under oath, in so far as it is responsive to the allegations of the bill and direct, positive and unequivocal in its terms, is evidence in favor of the defendant, in order to overcome which two witnesses are required, or one witness and corroborating circumstances.

3. While the findings and conclusions of a chancellor, where the testimony is not taken before him, but before a master or examiner, by reason whereof he is not afforded an opportunity of seeing and hearing the witnesses, are not entitled to the same weight as the verdict of a jury, yet even in that case they should not be disturbed by an appellate court, unless they are clearly shown to be erroneous.

4. In equity, as well as at law, every presumption is in favor of the correctness of the rulings of the trial judge, and a final decree rendered by him, based largely and solely upon questions of fact, will not be reversed unless the evidence clearly shows that it was erroneous.

Appealed from the Circuit Court for DeSoto County.

The facts in the case are stated in the opinion of the court.

*Baker & Baker,* and *Jas. F. Glen,* for Appellant;

*J. H. Hancock* and *Treadwell & Treadwell,* and *W. V. Williams,* for Appellee.

SHACKLEFORD, C. J.—This suit arises out of a former suit for the foreclosure of two mortgages brought by the appellant against Eugene M. Putnam, one of the appellees, and other parties as defendants, including Fred W. Haward, and which foreclosure proceedings included the lands in controversy in the instant suit. The bill in such foreclosure suit was filed on the 20th day of Sep-

tember, 1909, and on the same day was filed and recorded the statutory *lis pendens* notice, which contained a specific description of all the premises described in the bill. No specific relief appears to have been prayed against the defendant, Haward, who filed an answer in which he averred, among other things, that the defendant, Putnam, had made application to him as the legal owner of the lands in controversy to purchase the same, and that on the 24th day of October, 1908, he had executed and delivered a bond for title to such lands, with the exception of a certain described parcel, wherein he had agreed to convey such lands to Putnam upon the payment of the purchase price therefor, which Putnam had utterly failed to do. We copy in full from such answer the paragraphs numbered 3 and 4:

"3. Further answering said bill of complaint, this defendant avers that said defendant, Putnam, had no authority or right to mortgage, pledge or in any way encumber the lands of this defendant so covered by said bond of title in favor of the said complainant or any other person, firm or corporation, and this defendant avers that he is the legal owner of said lands herein above referred to and described.

4. Further answering the said bill of complaint, this defendant says that this defendant, while he is advised and believes that the said defendant, Putnam, has forfeited all rights under the said bond for title, is ready and willing to grant the said defendant, Putnam, for a reasonable time, the opportunity to pay the consideration stipulated in said bond for title, together with the costs and expenses this defendant has been put to in the matter, and thereupon to receive conveyance for said lands described therein.

And this defendant, further answering, denies that the

complainant is entitled to the relief or any part thereof in the said bill of complaint demanded, and prays the same advantage of the answer as if he had pleaded or demurred to the said bill of complaint; and prays to be dismissed with his reasonable costs, and charges in this behalf most wrongfully sustained."

On the 2nd day of August, 1910, the Circuit Judge of the Fourth Judicial Circuit, in the absence from the State of the Circuit Judge of the Sixth Judicial Circuit, in which Circuit the County of DeSoto was then situated, rendered a final decree, in which he found that the equities were with the complainant, and ordered the sale of the mortgaged premises. We copy the following paragraph from such decree:

"It is further ordered, adjudged and decreed that this decree shall be without prejudice to the right of Fred W. Haward to receive payment of the money due him on account of a contract for sale of a portion of the mortgaged premises as set forth in his answer filed herein, and that he shall continue to have a lien upon the lands embraced in the said contract until he shall receive in full the unpaid purchase money due him with interest, and such lien shall not be affected or discharged by the sale of the mortgaged premises."

On the 6th day of September, 1910, the Circuit Judge of the Fourth Judicial Circuit made a decretal order confirming the report of the Special Master, appointed for that purpose, as to the sale of the mortgaged premises to the complainant, the Barnes & Jessup Company. In pursuance of such decretal order, the Special Master executed and delivered to the complainant a master's deed to the mortgaged premises, which was duly recorded.

Subsequent to the execution of such master's deed, the

exact date not being disclosed in the transcript, the Barnes & Jessup Company filed a petition for a writ of assistance against M. V. Williams, one of the appellees in the instant suit, to which Williams filed an answer, and at the hearing thereof, each party being represented by counsel, on the 5th day of November, 1910, the Circuit Judge of the Sixth Judicial Circuit made an order granting such writ of assistance. We copy the following paragraph from such order:

"It is further ORDERED, ADJUDGED AND DE-CREED that the issuance and execution of this writ of assistance shall not affect the right of M. V. Williams, or whoever may be entitled thereto, to a lien against the said premises for the amount due to the defendant, F. W. Haward, on the purchase price thereof."

We see no occasion to set forth either the allegations of the petition or the averments of the answer. Such matters contained therein as we may deem necessary for an intelligent understanding of this opinion we shall refer to later.

On the 25th day of November, 1910, which date, it will be observed, was prior to the granting of the order for the writ of assistance, the appellant filed the bill in the instant suit. In addition to the matters which we have above set forth, with the exception of the proceedings for the writ of assisance, it was alleged in such bill, among other things, as follows:

"And your orator would further aver that the above described lands were in the actual possession of the defandant, Putnam, prior to and at the time of the filing of the said bill of complaint. And that the defendant, Putnam, had gone into such possession under tax deeds and claims of title; but that one Fred W. Haward had a claim of title to the said lands, and the defendant, Put-

nam, to perfect his title to the said lands made and entered into a contract with the said Haward to purchase from him the said lands, and continued in such possession after the making of the said contract.

## IV.

And your orator would further show that pending the said sale in the aforesaid foreclosure proceedings, and at and about the time thereof, to-wit, on August 23, 1910, the defendant, Putnam, made and entered into an agreement with the defendant, M. V. Williams, whereby your orator would be deprived of the benefit and advantage of the said contract with the said Haward, and the benefit and advantage of obtaining all the right, title and interest of the defendant, Putnam, in and to the said premises. Under the said agreement the said defendant, Williams, agreed to advance such money as might be necessary to take up the unpaid deferred payments upon the said lands due under the said contract with Haward; and the defendant, Putnam, assigned and transferred to the defendant, Williams, all his right, title and interest in and to the contract with the said Haward. In pursuance of the said agreement between the defendants, Putnam and Williams, the said Haward made and executed a deed conveying to the defendant, Williams, all the right, title and interest of the said Haward in the said lands in consideration of the payment by the said Williams of the amounts due as deferred installments upon the purchase price thereof, to-wit, the sum of about fifteen hundred dollars, under the aforesaid contract of sale between Haward and the defendant, Putnam; and that in further pursuance of the said contract between the defendants, Putnam and Williams, the said Haward at-

tached the deed so executed by him to a draft for the amount of the deferred payments aforesaid and sent it to the Bank of Punta Gorda, of which bank the said Williams is an officer; and that the said deed has recently been delivered, and all of such matters and things were done without the knowledge of your orator, and your orator has just been informed thereof.    And your orator would further aver that the said deed is a deed of bargain and sale, and has no warranties of title.

### V.

And your orator further avers that the defendant, Williams, had notice by the records by the filing of the aforesaid notice of lis pendens and of the pendency of the said suit, by making and entering of the final decree in the said cause, and by the other acts, things and proceedings had therein, of the interests, rights and claims of your orator in and to the said lands, and that the interest and right of the defendant, Putnam, in the said lands was subject to the rights, interests and claims of your orator therein.

And your orator further avers that the defendant, Williams, was well acquainted with and had actual notice of all the rights, claims, titles and interests of your orator in and to the said lands, and that the interests of the defendant, Putnam, therein had become subject to the lien of the mortgages of your orator as aforesaid; and before the payment of the said money and the acceptance of the said deed the defendant, Williams, had actual notice and knowledge of the sale of the interest of the defendant, Putnam, in the said lands to your orator under the said final decree, and that your orator was

entitled to all of the rights, interests and claims of the defendant, Putnam, in and to the said lands.

And your orator further avers that it was at the instance of the defendant, Putnam, that the said Haward made and executed the deed aforesaid to the defendant, Williams; and the purpose and intent of the said deed was to deprive your orator of the said premises; and your orator is informed and believes and on such information and belief alleges that if the defendant, Williams, by reason of the said deed from said Haward, shall obtain any benefit and profit such profit and benefit will be divided between the defendants, Williams and Putnam.

## VI.

And your orator further avers that the amount paid by the said Williams for the interest and title of the said Haward in the said lands is much less than the value of the said lands; and that the said premises are of great value, to-wit, of the value of about six thousand five hundred dollars."

The two defendants, who are appellees, here, were required to answer the bill under their respective oaths.

The prayer of the bill was as follows:

"Your orator would, therefore, pray that the defendants, M. V. Williams, may be decreed to have paid to the said Haward the deferred installments of the purchase price of the premises herein described with knowledge and notice of your orator's interest in and title to the said described premises; that your orator is the owner of the said premises, subject only to a lien for the amount due to said Haward and paid by the defendant, Williams: that an accounting of the amount due the defendant, Williams, for the payment aforesaid may be

had and in such accounting, if the defendant, Williams, has sold and conveyed any portion of the said lands or any interest therein and your orator is willing to ratify and confirm such sale or 'sales, that the defendant, Wililams, be charged with the proceeds thereof; that a Special Master be appointed to take and state an account between the complainant and the defendant, Williams; that the defendant, Williams, be required to grant and convey all interests conveyed to him in the said premises to your orator upon the payment of such amount, if any, as may be decreed to be due by your orator to defendant, Williams; that if the defendant, Williams, be found to be indebted to your orator that the defendant, Williams, be ordered, adjudged and decreed to pay to your orator the amount so found to be due your orator; that the interest of the defendant, Putnam, in the said premises may be decreed to be subject and subordinate to the interest of your orator therein; and that the defendants, Williams and Putnam, may be enjoined and restrained by the order of this Honorable Court from selling or attempting to sell and dispose of any of the above described premises, or any part or interest therein and interest therein conveyed by the said Haward as aforesaid; and that your orator may have such other and further relief in the premises as to your Honor shall deem meet and proper in equity and good conscience."

Each of the defendants filed his answer under oath in which all the equities of the bill were denied. The cause was referred to a special master to take and report the testimony adduced by the respective parties litigant, which such special master did. Quite a volume of such testimony was so taken and reported, including much documentary matter.

On the 15th day of June, 1912, the Circuit Judge of

the Tenth Judicial Circuit, of which Circuit DeSoto County had then become a part, rendered a final decree in the cause, which, omitting the formal parts, is as follows:

"This cause coming on for final hearing, and it appearing to the court that upon application of counsel, after the issues had been duly joined in said cause, that said cause was referred to a Special Master, in Chancery to take the testimony of the respective parties and to report the same to the court, and it further appearing that the said Master has by virtue of said order of reference taken the testimony and reduced the same to writing of all the witnesses of the respective parties in said cause and has made due report thereof to the court.

And the court, having examined the said master's report with the testimony thereto annexed, and having heard the arguments of counsel for the respective parties, and being fully advised in the premises, the court finds that the equity of said cause is not with complainant:

IT IS THEREUPON ORDERED, ADJUDGED AND DECREED by the court that the relief prayed for by the said bill of complaint be and the same is hereby denied.

It is further ordered, adjudged and decreed that the complainant's said bill of complaint be and the same is hereby dismissed at the cost of complainant. And that in default of the payment of the said cost that an execution therefor in due form of law do issue."

From this decree the complainant has entered its appeal and has assigned four errors, all of which question the correctness of the decree, and are argued together. We shall so treat them. Quite a number of objections were interposed to certain proffered evidence, but we can consider none of them, for the reason that they are not

shown to have been presented to and ruled upon by the *Circuit* Judge, at or before the final hearing of the cause, in accordance with the provisions of Equity Rule 18 of the Supreme Court rules adopted March 2nd, 1905.    See West Coast Lumber Company v. Griffin, 54 Fla. 621, 45 South. Rep. 514; Dallam v. Sanchez, 56 Fla. 779, 47 South. Rep. 871; Lovett v. Armstrong, 61 Fla. 681, 54 South. Rep. 381; Baxter v. Liddon, 62 Fla. 428, 56 South. Rep. 410. As a matter of fact, these objections are not urged before us.    As we have repeatedly held, "If a complainant in a suit in equity desires to avoid the probative force of a sworn answer, he may do so   by expressly waiving the oath in his bill.   Where the complainant fails to do this, an answer, under oath, in so far as it is responsive to the allegations of the bill, and direct, positive and unequivocal in its terms, is evidence in favor of the defendant, in order to overcome which two witnesses are required, or one witness and corroborating circumstances." Russell v. Stickney, 62 Fla. 569, 56 South. Rep. 691.    After a careful reading of all the evidence adduced, we are of the opinion that the complainant has failed to overcome the probative force of the sworn answers of the two defendants.    As we have often held, while the findings and conclusions of a chancellor, where the testimony is not taken before him, but before a master or examiner, by reason whereof he is not afforded an opportunity of seeing and hearing the witnesses, are not entitled to the same weight as the verdict of a jury, yet even in that case they should not be disturbed by an appellate court, unless they are clearly shown to be erroneous.

In equity, as well as at law, every presumption is in favor of the correctness of the rulings of the trial judge, and a final decree rendered by him, based largely and

solely upon questions of fact, will not be reversed, unless the evidence clearly shows that it was erroneous. See Baxter v. Liddon, *supra*.

These principles would seem to be decisive of this appeal. Haward is not shown to have been under the slightest obligation to the appellant. After the default of Putnam, he was free to sell and convey the lands in controversy to whomsoever he saw fit. No fraud or collusion between him and either of the appellees is established, and neither is fraud or collusion established between the appellees. We might admit the correctness of the legal principles cited to us by the appellant, but we are of the opinion that they are not applicable to the facts established by the evidence in the instant case.

The final decree must be affirmed.

TAYLOR, HOCKER and WHITFIELD, J. J., concur.

COCKRELL, J., dissenting.

It seems to me that the status of Haward was definitely fixed by the decree of Aug. 2, 1910, as a lien holder merely and not the owner of the premises. That decree is not before us for review, and no suspicion is cast upon its integrity. It is definite in meaning, and not therefore to be construed away by reference to the pleadings, or by any error that might have crept into it. Under that decree the land was sold as the property of Putnam, subject only to Haward's lien for unpaid purchase money. With great promptness, upon the confirmation of the sale under this decree, the purchaser at that sale offers to pay off this lien, and the right is denied him.

Granting that the complainant in this supplemental

bill, or whatever it may be termed, failed to prove the charges of fraud and collusion between Putnam and Williams, Williams purchased only what Haward had, which was adjudicated by the first decree, as being only a right "to receive in full the unpaid purchase money due him with interest." He did not get title from Haward, since by judicial ascertainment, the title in Haward had passed to Putnam, and in its stead Haward had only a lien for the unpaid purchase money.