J. M. BURNETT, Tax Collector, W. B. GRAY, T. C. HAMMOND and JAMES G. YATES, Supervisors of Southwest Tampa Storm Sewer Drainage District, ELDREDGE & COMPANY, a corporation, W. L. SLAYTON & COMPANY,

a corporation, WILLIAM R. COMPTON & COMPANY, a corporation and H. H. SEARS, Intervenor, *Appellants,* vs. C. W. GREENE and ROBERT A. MEIER, *Appellees.*

144 So. 205.

En Banc.

Opinion filed June 17, 1931.

Opinion rehearing filed August 6, 1932.

O. K. Reaves, Herbert G. Phillips, E. E. Graves, Knight, Thompson & Turner, R. E. Kurtz and Giles J. Patterson, for Appellants;

Henry E. Williams and George C. Bedell, for Appellees.

WHITFIELD, J.—This suit was brought to quiet the title to lands in a drainage district against assessments for drainage purposes, upon allegations of the invalidity of the statute and of the proceedings thereunder by which bonds were issued and assessments of taxes made to pay the bonds, the proceeds of the bonds being used to drain lands in the district. In effect the prayer is that the establishment of the drainage taxing district and the assessments made be adjudged invalid and a cloud upon complainants' title, that collections of the drainage taxes be permanently enjoined, for a temporary injunction against such drainage tax collections and for general relief. A temporary restraining order was affirmed. Burnett v. Green, 97 Fla. 1007, 122 So. 570.

The decree rendered on final hearing from which this appeal was taken, is set out in part in the opinion of Mr. Justice Ellis. Such decree holds the statute to be invalid, that all the proceedings had and the bonds issued under the statutes are invalid, that the proceedings for the validation of the bonds are invalid, that the benefits

actually accruing to the owners of the lands in the district by the drainage operations amount to $753,125.50 and no more and the decree vacates and declares null and void the decree establishing the drainage district; adjudges that the right and interest of the several defendants, known or unknown, in and to the lands in the district, is a proportionate several interest in each of those of them holding bonds issued by said district in an equitable lien for $753,125.50 in the proportion that each bond holding bears to the entire bond issue; the drainage tax records and books are cancelled, and the collection of the drainage taxes permanently enjoined, with provisions for ascertaining the respective individual rights in the equitable lien decreed to be on the lands for the proportionate amounts allowed on the total bond issue.

The drainage district was established in substantial compliance with the requirements of the statute, therefore if the statute is valid, the decree should be reversed for appropriate proceedings. The record does not clearly establish illegality in all of the bonds issued even though the legality of particular transactions and the validity of specific assessments as made may be challenged if the right to do so has not been lost by waiver, acquiescence or otherwise.

The validity of Chapter 6458, Acts of 1913, the general drainage law, sections 1451 (1098) et seq., C. G. L., has been adjudicated in McMullen v. Newmar Corporation, 100 Fla. —, 129 So. 870; Duval Cattle Co. v. Hemphill, 41 Fed. (2nd) 433. See also Pinellas Park Drainage Dist. v. Kessler, 69 Fla. 558, 68 So. 668; State ex rel. v. Walters, 75 Fla. 584, 78 So. 671; Towns v. State ex rel., decided at this term.

Section 11, Article V, of the constitution provides that "the circuit courts shall have * original jurisdiction of"

stated matters "and of such other matters as the Legislature may provide."

Chapter 6458 confers upon the circuit court "original and exclusive jurisdiction" to determine upon appropriate hearing whether "the establishment of the said drainage district and the improvements to be ·made thereunder will be for the advantage of the owners of the real property therein or that the same would be in the interest of the public health, convenience or welfare." The statute is a general law designed to operate throughout the State wherever defined conditions exist. The authority given to the circuit court by the statute is not to determine what the law shall be or upon subjects the law shall operate; but it is merely to ascertain whether in a particular locality the conditions exist with reference to the subjects upon which the general law complete in itself may operate by its own force. It being impracticable for the legislature to make these determinations itself, and, such determinations not being an exclusive legislative *power*, the function to' so determine, being administrative or quasi-judicial in its nature, may under section 11, Article V, constitution, be conferred upon the circuit courts within the limitations defined in the act without violating the provisions of Article II of the constitution that "no person properly belonging to one of the departments shall exercise any *powers* appertaining to either of the others" with exceptions immaterial here.

Where the taxing district is not established by the legislature itself, but is to be formed by procedure under the statute, appropriate notice and opportunity to be heard must be given to afford due process of law; and such procedure may be in a judicial tribunal when not forbidden by organic law. 19 C. J. 615. McMullen v. Newmar Corp., *supra*. Houck v. Little River Drainage Dist., 239 U. S. 254. If the procedure is in an administra-

tive tribunal it is subject to judicial review. If the procedure is in a judicial tribunal it has the attributes accorded to it by the law.

There is nothing in the constitution forbidding a statute to authorize a finding by the circuit court that the establishment of a drainage district "will be for the advantage of the owners of the real property therein," or that the district "would be in the interest of the public health, convenience or welfare." Advantage or benefit to the owners of real estate in the area afford the considerations and reasons for establishing drainage districts under the authority of statutes. Wilton vs. St. Johns County, 98 Fla. 26, 123 So. 527.

The decree is reversed and the cause remanded for appropriate proceedings.

TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS, J., dissent.

DAVIS, J., concurring.—I concur in the views expressed by Mr. Justice Whitfield in the majority opinion and in the conclusion that the decree appealed from should be reversed. The Act under which the Interbay Drainage District was created is Chapter 6458, Acts of 1913. That Act, as has been pointed out, has been expressly held to be constitutional by this Court, by the Federal Court of Appeals for this District, and its constitutionality has in effect been affirmed by the Supreme Court of the United States, which has refused to review or reverse the views expressed by the Circuit Court of Appeals for the Fifth Circuit. If the Act is constitutional, as has been held, it must mean something more than a mere scrap of paper. It provides how a special tax district shall be created and who shall act as the agent of the State in giving effect to the legislation involved in the question. The act of creation is no doubt legislative in character, but where a district is created after a finding of fact

required by law to be made to give effect to a legislative act, the finding so made must be and is judicial in character. Being judicial in character, such finding must be accorded the same weight as against a collateral attack as is accorded to any other finding of fact made by a judicial officer. In fact, this principle of law has been expressly recognized in a recent bank case where this court reversed on a writ of error the finding of the Circuit Court of Leon County in a case involving the "freezing" of bank deposits. There the power to *freeze* was undeniably a part of the legislative police power, but putting it into effect upon a certain contingency of fact was judicial in character and this court so recognized and acknowledged its judicial character by denying a motion to dismiss the writ of error taken to review the court's judgment and by later affirming the judgment itself. See Amos .v. Conkling, 99 Fla. 206, 126 So. 283.

Undoubtedly the Legislature could have created the Interbay Drainage District directly without the consent of the local authorities. But it also had power to provide for its creation upon a certain contingency. The principal case in the United States on this subject is that of Houck v. Little River Drainage District, 239 U. S. 254, 60 L. Ed. 266, decided November 29, 1915. In that case it was declared by Mr. Justice Hughes of the United States Supreme Court that: "The Legislature, unless restricted by the State constitution, can create such districts, or, as in this case, it may provide for their institution through a proceeding in the *courts* in which the parties interested are cited to appear and present their objections, if any."

The question of whether or not the statutory conditions in controversy existed, which incidentally is the question of whether or not the legislative power operates in the particular case, is a judicial one. It is so far

judicial that the taxpayers have the constitutional right to a hearing on such question, or the Act itself will be declared unconstitutional. This was expressly decided in the now famous Texas Road Bond case, Browning v. Hooper, 269 U. S. 396, 70 L. Ed. 330.

Now if the taxpayer under the statute had a constitutional right to a hearing, which *hearing* was required to be full and complete and effective for the purpose, it seems beside the question to say that the decision reached on such hearing by the authority constituted to conduct it is other than judicial in character. Hence, if it is judicial in character, because it hears and determines controverted facts upon which the rights of property rest, then the decision when reached and declared must be a judicial judgment which is conclusive in character as to the facts decided.

In this case there appears to be a valid law providing for the creation of such a district as the Interbay Drainage District purports to be. There appears to be a *bona fide* attempt to organize under that law. As the result of that attempt to organize there appears to have been a user of the franchise of the District, and bonds of the District appear to have been issued and sold. Such bonds could only have been issued to accomplish the benefits contemplated by the law authorizing the very existence of the District. There was no authority to issue bonds in excess of benefits. Therefore when issued, the amount of the bonds fixed and determined conclusively the amount of benefits to the District as a whole. When the taxpayers of the district permitted these bonds to be validated without objection on their part, they became bound by the result of the validation proceeding. The fact that the benefits have been fixed in definite relationship to the amount of bonds which have been issued precludes any decree of court reducing the total

amount of assessments contemplated by law to be made to pay the bonds and the interest thereon. While internal adjustments or assessments can undoubtedly be made to meet particular cases, the total amount of tax assessments required to be made to pay the bonds cannot be substantially affected. This is particularly true where the validity of the bonds cannot be attacked, as in this case. The court below was therefore without authority to make a decree which so reduced the total of the assessment of the District as to reduce the same below the total of the assessments necessary to meet the bond requirements.

I also think that in so far as the claim of denial of due process of law was concerned, the court was in error in attempting to recognize such claim and give relief in this case to those who were making no individual complaint in this particular suit. The right to challenge a tax assessment on the ground that due process of law is denied is a personal right to the taxpayer who must assert it and rely on it in his own right. Such right may also be waived in many cases by failure to promptly object on that ground, in consequence of which the rights of others have been built up which it would be inequitable to disturb. See Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 54, 60 L. Ed. 523; Shepard v. Baron, 194 U. S. 567, 48 L. Ed. 1115; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253; State v. Fort Myers, 95 Fla. 704, 117 So. 97; Abel v. Boynton, 95 Fla. 984, 117 So. 507.

As has been pointed out, internal readjustments of assessments may be made to obviate any confiscation of any individual properties when complaint is made by individual taxpayers asserting their individual rights and establishing the same by proof where the same have not

been lost by laches or other considerations, but the court below in attempting to readjust, revise and reduce all of the assessments, individually and collectively, was acting in excess of its judicial powers in the premises and the decree made must accordingly be reversed.

I concur fully in what has been said by Mr. Justice Whitfield in speaking for the majority of the court, and with a certain degree of hesitancy give in addition thereto the individual views hereinbefore set forth in this special concurring opinion.

WHITFIELD AND TERRELL, J.J., concur.

ELLIS, J., dissents.—This is the second appeal in the case of C. W. Greene and Robert A. Meier v. J. M. Burnett, as Tax Collector of Hillsborough County, W. B. Gray, T. C. Hammond and James G. Yeats, as Supervisors of Southwest Tampa Storm Sewer Drainage District, formerly known as Interbay Drainage District, and Eldredge & Company, W. L. Slayton & Company and William R. Compton & Company and all unknown persons claiming any right, title, interest or claim upon any of the lands described in the bill or interested in any bonds issued by the Drainage District under either name. See Burnett v. Greene, 97 Fla. 1007, 122 South. Rep. 570, 69 A. L. R. 244.

This suit is one to quiet the title of the complainants who own lands in the Drainage District against drainage assessments and taxes imposed and bonds issued by the District. A sufficient analysis of the bill is given in the reported case on the first appeal as contained in 97 Fla. 1007, supra.

The allegations of the bill, which with the exhibits attached constitute seven hundred and eighty-six pages of the typewritten record present a history of usurpation and abuse of power, irregularity and illegalities in the attempted discharge of a public duty and fraud in the

execution of the ostensible purposes of the District organization and handling of the funds raised by bond issues that is most extraordinary if not unparalleled in public utility activities in this State so far as any official record discloses.

If the allegations of the bill are true in their entirety or in part so far as they affect the organization of the district it is difficult if not impossible to reconcile a denial of the relief sought by the complainants with an orderly and virtuous administration of public affairs.

On the 19th day of November, 1928, Gray, Hammond and Yates as supervisors of the District answered the bill in which answer they included a demurrer and on the 19th day of November, 1928, the court after hearing arguments of counsel on the "bill, answer, testimony and proofs" granted a temporary injunction against Burnett as Tax Collector from "collecting or attempting to collect the 1928 annual drainage taxes levied against the lands of the complainants and other property owners" in the Drainage District pending a final hearing in the suit. The injunction to become effective upon the complainants' executing a bond in the sum of five thousand dollars conditioned to pay all costs and damages in the event the injunction should be dissolved or the bill of complaint be dismissed on final hearing. The bond was executed and approved two days later.

An appeal was taken from that order to this Court which affirmed the order of the Chancellor by an opinion and decision filed May 29, 1929, and a petition for a rehearing was denied July 9, 1929. The decision of this Court in the case as reported is embraced in the following words: "Under the provisions of the Act which constitutes the authority for the establishment of drainage districts a public agency may be formed in which the power to levy and collect taxes is vested, but such agency may

under the provisions of the Act exist if in the opinion of the court the district and the improvements to be made will be for the 'advantage of the owners of the real property therein' as contradistinguished from the character of the enterprise as one 'in the interest of the public health, convenience and welfare.'

The Act it would seem thus contains its own seeds of dissolution. Advantage to the owners of the land may exist irrespective of whether the enterprise is for the public health or welfare. If it is in fact for the latter purpose the owners share that advantage in common with the public, so it is evident that there was in the legislative mind a personal or private advantage distinguished from the public health and welfare.

"In this view of the case and without discussing the other questions presented we are of the opinion that the injunctional order was correct and it is hereby affirmed."

Four justices of this court concurred in the affirmance; two of them "because of the showing of illegality in the proceedings had."

The assignments of error attacking the rulings of the Chancellor upon the admission and rejection of evidence in that case were abandoned and were so treated by the court. The appellants sought to meet the cause of the complainants below by saying that the suit was a collateral attack on the decree establishing the district, that the order of the court was valid and remains so until reversed for error and complainants were bound by it and that the bonds issued were negotiable and complainants are estopped by laches from attacking them.

These points were decided against appellants. Two justices were of the opinion that the attack was a collateral one upon the decree organizing the district. The Federal Court in the case of Greene and Meier et al. v. Uniacke, No. 5877 C. C. A. decided February 16, 1931,

had the same view. This court, speaking through Mr. Justice Walker, referring to the organization of the district by the order of the Circuit Judge, said: "the judgment of the Court (one of plenary jurisdiction) establishing the Drainage District" is not open to collateral attack.

The fallacy of the argument is most apparent. It lies in assuming that the Circuit Judge in acting under authority of the statute performs any judicial function whatsoever. The fact that the Statute, Sections 1098-1152, comprising Chapter III, Art. 1, Title VIII of R. G. S. 1920, designates the "court or Judge thereof" as the person to "order, declare and decree" the district to be a public corporation upon considering the petition for the formation of the district which is required to be filed in the office of the Clerk of the Circuit Court does not vest in that "court or judge thereof" the slightest vestige of judicial power. Therefore there cannot be drawn to the order by the mere circumstances of its being made by the Judge of the Circuit Court anything of judicial verity or quality which flows from an order of a court of plenary jurisdiction in litigation before it within the scope of its constitutional jurisdiction. The act would have been just as valid if it had required the clerk or the sheriff or the Chairman of the Board of County Commissioners or the Tax Assessor to "order, declare and decree" the District to be a public corporation upon considering the petition. That is true because there is nothing of judicial power attempted to be vested in the "court or judge thereof" or in any person or officer who might have been designated to make the order.

The creation of the District is a legislative and not a judicial function and no virtue can be imparted to it by utilizing official of the judicial branch as the agent or executor of the legislative will to make the order. There

are no justiciable questions to be determined; there is no case to be considered; no pleadings to be settled; no parties to litigation; no adjudication of right, but a mere duty to ascertain the existence of certain facts. A mere fact finding agency concerning whose report it seems like thin sophistry to say it is "res adjudicata". So the decision in the first appeal settles the law of the case because it determines the "illegality of the proceedings" under which the District was attempted to be organized.

On the 6th day of May, 1929, W. R. Compton demurred to the bill and so did Eldredge and Company. On the 15th day of May, 1929, W. L. Slayton answered the bill averring that he owns part of the issue of bonds, that he obtained no discount and had resold many of them to divers and sundry persons. He disclaimed knowledge of many allegations contained in the bill, admitted the levy of taxes by the District, averred that the District was duly created and the court did have "jurisdiction" in entering the order and averred that the facts alleged in the petition for establishing the district were sufficient to justify the order and denied all knowledge of or participation in the fraud alleged in the bill in the matter of letting contracts and selling bonds. The answer averred that the bonds known as the first issue of Interbay Drainage District Bonds are valid and binding obligations upon the district. That conclusion is based upon averments in the answer setting out the proceedings in which the District was organized, the work contracted for and the bonds issued to pay for it. There was incorporated a demurrer in the answer which questioned the equity of the bill, urged that complainants' remedy was in the nature of quo warranto, raised the question of estoppel, urged that the Drainage District is a de facto corporation, that the suit was a collateral attack upon the order of the court establishing the District and confirming the assess-

ment of drainage taxes, urged that the allegations of the bill as to fraud were mere conclusions of the pleader and other grounds presenting the same questions in different words.

The demurrers of Eldredge and Company and Compton and Company were overruled and they answered the bill denying its material allegations relating to fraud and averring the sufficiency of the petition for the formation of the district and the validity of the Court's order.

On the 22nd day of August, 1929, the Chancellor amended his order restraining the collection of the 1928 taxes by making it apply to the taxes levied for the year 1924 and subsequent years.

In September, 1929, an order was made allowing H. H. Sears to intervene and answer and opening the pro confesso decree theretofore entered against unknown defendant in so far as it applied to Sears. This defendant averred in his answer that he was one of the purchasers of the bonds issued by the District as the second issue. The answer denied any knowledge of fraud, denied that the bonds were non-negotiable and averred that they were a contract between him and the District the validity of which cannot be impaired by any action of the State or any branch of the government without violating the State and Federal Constitutions. The answer denied all knowledge of irregularities and illegalities in the proceedings in formation of the District and averred that he was a purchaser of the bonds in good faith and in reliance upon the decision of this Court in the case of Pinellas Park Drainage District v. Kessler, 69 Fla. 558, 68 South. Rep. 668, construing Chap. 6458 Acts 1913. The defendant averred that the work in execution of the Plan of Reclamation adopted by the District was completed and the property owners of the district are in possession of such

improvements and utilizing the same and have paid the taxes levied in large part.

A guardian ad litem had been by order of the court appointed for the unknown defendants and on September 17, 1929, answered the bill. That answer admitted that the complainants were owners of land in the District and that drainage taxes had been levied as alleged. It denied the allegations of the bill that the land embraced within the boundaries of the district did not constitute a contiguous body of wet and overflowed lands, denied that the Atlantic Coast Line Railway Company or any other person withdrew objections made to the creation of the District or that the petition was not signed by a majority of the owners of the land or owners of a majority of the acreage; denied the authority of the complainants to question the corporate acts of certain corporations the names of which appeared upon the petition for the establishment of the District as signers of it; denied the alleged fraud of C. L. Knight & Son and J. G. Yeates in signing the petition and denied all allegations as to irregularities and illegalities in the formation of the District.

W. L. Slayton then amended his demurrer by injecting into the controversy the proposition that the relief sought by the bill would offend against the Fourteenth Amendment to the Constitution of the United States as well as Section 10 of Article I in that the relief sought would impair the obligation of a contract entered into by the District and injuriously affect vested rights acquired by the defendant.

On September 23, 1929, the Chancellor appointed a Special Master to take the testimony.

Much testimony and documentary evidence was submitted and the chancellor rendered a decree finding the facts to be and holding that the complainants had main-

tained their bill and the equities were with them, that the statute under which the Interbay Drainage District was formed or attempted to be formed is invalid under the Constitution of Florida; that all proceedings which had been taken for the organization of the District and all proceedings for the levy of taxes for purposes of the District and all proceedings for the assessment of benefits in pursuance of the purposes of the District and all bonds and obligations purporting to have been issued by the "Interbay Drainage District or Southwest Tampa Storm Sewer Drainage District" were contrary to law, invalid and void and all proceedings for the validation of the said bonds were likewise contrary to law and invalid.

The court also found from the evidence that the benefits actually accruing to the owners of the land within the boundaries of the District by reason of the works and improvements made in pursuance of the purposes of the District amounted to $753,125.50 and no more and holding that it is just and equitable that that sum should be paid by the owners of the lands as provided further in the decree.

Omitting the description of the lands and preliminary statement of the Chancellor's findings from the evidence except as the substance of such finding is given above, the remainder of the decree is as follows:

"WHEREUPON it is Ordered, Adjudged and Decreed by the Court as follows, that is to say:

I.

"That the decree recorded in the office of the Clerk of the Circuit Court for Hillsborough County, Florida, purporting to establish said Interbay Drainage District, be, and the same is hereby vacated and declared null and void and of no effect.

II.

"That the right and interest of the several defendants, known or unknown, in and to the lands contained within the boundaries of said District, and

hereafter described, is a proportionate several interest in each of those of them holding bonds issued by said District under either of its names in the equitable lien for $753,125.50 hereinafter referred to, the interest of each individual holder to be in the proportion of his holding to the entire amount of bonds issued by said District under either of its names.

III.

"The Drainage Tax Record of Interbay Drainage District, Hillsborough County, Florida, and any and all assessments therein set forth, be, and the same are hereby cancelled.

IV.

"That the Drainage Tax Books, Interbay Drainage District, Hillsborough County, Florida, for the years 1924, 1925, 1926, 1927 and 1928, be, and the same are hereby cancelled.

V.

'That defendant, J. M. Burnett, Tax Collector of Hillsborough County, Florida, and his successors in office, be, and they are hereby permanently enjoined and restrained from collecting, or attempting to collect, the annual drainage tax for the year 1928 levied against land appearing in the Drainage Tax Book, Interbay Drainage District, Hillsborough County, Florida, for the year 1928.

VI.

"That the temporary injunction heretofore granted in this cause be, and the same is hereby confirmed and made permanent.

VII.

"And that the defendants, J. M. Burnett as Tax Collector of The County of Hillsborough, State of Florida, and W. B. Gray, T. C. Hammond and James G. Yeats as Supervisors of Southwest Tampa Storm Sewer Drainage District, formerly known as Interbay Drainage District, and Eldredge & Company of the City of New York, State of New York, and W. L. Slayton, trading as W. L. Slayton & Company, of the City of Toledo, State of Ohio, and William R. Compton & Company, and all unknown persons claiming any right,

title, interest in or claim upon any lands in the Bill of Complaint described, as owners or holders or otherwise interested in any bonds issued by Interbay Drainage District or Southwest Tampa Storm Sewer Drainage District, be and they are hereby severally and respectively, perpetually enjoined and restrained from asserting any right, title, interest, claim or demand by virtue of any levy or taxes for the purposes of said Interbay Drainage District or said Southwest Tampa Storm Sewer Drainage District, or by virtue of any proceedings had or taken for the assessment of benefits in pursuance of the purposes of said Interbay Drainage District or said Southwest Tampa Storm Sewer Drainage District, or by virtue of any bonds or obligations purporting to have been issued by said Interbay Drainage District, or Southwest Tampa Storm Sewer Drainage District, against any of the lands of the complainants, or the lands of any persons owning land who may take advantage of paragraph VIII of this Decree, contained within the boundaries of the said Drainage District, that is to say: * * *

"Except that the owners and holders of said bonds issued in pursuance of the purposes of said Interbay Drainage District and said Southwest Tampa Storm Sewer Drainage District are hereby decreed to have and may by appropriate proceedings enforce against the several parcels of land contained within the boundaries of said District in the proportion to which they have received the benefits of the works and improvements done and made in pursuance of the purposes of said district an equitable lien for said sum of $753,125.50 payable in twenty-five equal annual installments, with interest at the rate of six per cent per annum from the date of this decree upon the amount from time to time remaining unpaid, and the right and interest of each individual holder to be in the proportion of his holding to the entire amount of bonds issued by said District under either of its names.

VIII.

"That for the purpose of ascertaining the parties at interest entitled to the benefit of this decree, any and all persons owning land within the boundaries of

said District may by petition and proof to be presented to W. S. Wilson of Tampa, Florida, as Special Master, establish the proportionate part of the reasonable expenses of this suit and proceedings by appeal or otherwise to protect their interests in the subject matter of this litigation, reasonably chargeable to them, and pay the sum ascertained to said Master for the account of the plaintiffs. The proceedings of the Master shall be reported to the Court, and subject to proper exceptions.

### IX.

"The Court reserves full power and jurisdiction to make such further orders and decrees as may be necessary or proper to establish and make effectual the matters hereby adjudicated.

"DONE AND ORDERED by the Honorable D. J. Jones, Judge of the Ninth Judicial Circuit of Florida, acting in the place and stead of the Judges of the Thirteenth Judicial Circuit of the State of Florida in and for Hillsborough County, disqualified, this 24th day of March, A. D. 1930.

D. J. Jones,
Judge of the Ninth Judicial
Circuit of the State of Florida."

The decree was entered March 25, 1930, and on September 2, 1930, defendants appealed from the decree.

The assignments of error attack every finding of fact and legal or equitable holding of the Chancellor as set forth in the decree. There are twenty-eight assignments of error.

So far as the facts of the case, which relate to the proceedings in the attempted formation of the Drainage District, the letting of contracts and the issuing of bonds, bear upon the validity of the Chancellor's decree the record discloses ample evidence to support his findings, as well as the findings that the owners of the land had benefited by the improvements made to the value of $753,125.50 and no more. The total amount of the two

issues of bonds was $3,087,000.00 as the pleadings and evidence show.

These findings of fact by the Chancellor will not be disturbed as there is sufficient substantial evidence to support them and it does not clearly appear that he has erred in such conclusions. See Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97; Bothamly v. Queal, 58 Fla. 396, 50 South. Rep. 415; Theisen v. Whiddon, 60 Fla. 372, 53 South. Rep. 642; Bank of Jasper v. Tuten, 62 Fla. 423, 57 South. Rep. 238; Dixon Lumber Co. v. Jennings, 63 Fla. 405, 57 South. Rep. 615; Barnes & Jessup Co. v. Williams, 64 Fla. 190, 60 South. Rep. 787; McGill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Simpson v. First Nat. Bank, 74 Fla. 539, 77 South. Rep. 204; Smith v. O'Brien, 75 Fla. 252, 78 South. Rep. 13; Davidson v. Collier, 75 Fla. 783, 78 South. Rep. 983; Hill v. Beacham, 79 Fla. 430, 85 South. Rep. 147.

Where there is irreconcilable conflict in the testimony on which a decree is based but there is evidence to support the decree it will not be reversed. Waters v. So. Asphalt & Const. Co., 67 Fla. 440, 65 South. Rep. 457; Hogeboom v. Anderson, 70 Fla. 393, 70 South. Rep. 312; Rosenthal v. First Nat. Fire Ins. Co., 74 Fla. 371, 77 South. Rep. 92; Tatum Bros. Real Estate & Inv. Co. v. Osborn, 79 Fla. 130, 83 South. Rep. 703.

In case a doubt is raised by a decided conflict in the testimony and there is no outstanding feature of the case resolving the doubt in favor of either party an appellate court will not disturb the finding of the Chancellor. See Craft v. Am. Ag. Chem. Co., 81 Fla. 55, 87 South. Rep. 41; Commercial Bank of Ocala v. First Nat. Bank, 80 Fla. 685, 87 South Rep. 315.

The above rule may be deemed to be settled in this State. It is contended by appellants however that the

attack upon the organization or existence of the District is not permissible because it is a collateral attack. That as the Circuit Court is a court of plenary jurisdiction the presumption of the regularity and legality of the proceedings and validity of its orders and decrees cannot be overcome in a collateral attack upon such decrees; that this suit is a collateral attack upon the court's decree establishing the District, the regularity of the proceedings and the validity of its orders validating the bond issue.

There is no fault to be found with the doctrine that the orders and decrees of a *court* having juridiction of the subject and the parties, however, erroneous, being valid, binding and conclusive determinations of the matter in controversy cannot in the absence of fraud be impeached in a collateral proceeding. This rule is applicable to courts of general jurisdiction or which exercise general jurisdiction over a particular class of cases. Courts of equity, inferior courts and quasi-judicial tribunals such as boards of county commissioners, county boards, township trustees and boards of equalization are within the rule securing immunity of their orders and judgments from collateral attack.

The rule against collateral attack upon judicial or quasi-judicial orders or decrees of courts or such quasi-judicial bodies rests in public policy and is intended to give permanency to all judicial or quasi-judicial transactions and rights acquired thereunder. The rule however is dependent on the existence of a legally organized tribunal possessing jurisdiction of the parties and subject matter. A judgment in excess of the power of the court is void and of course subject to collateral attack.

The rule is well established in this country as well as in England. Mtg. Trust Co. v. Redd, 38 Colo. 458, 88 Pac. Rep. 473, 120 A. S. R. 132, 8 L. R. A. (N. S.) 1215;

Johnson v. McKinnon, 54 Fla. 221, 45 South. Rep. 23, 127 A. S. R. 135, 14 Ann. Cas. 180, 13 L. R. A. (N. S.) 874; Ex Parte Roe, 234 U. S. 70, 34 Sup. Ct. Rep. 722, 58 L. Ed. 1217.

While the doctrines of collateral attack and res judicata are essentially fundamentally related there is a distinction which is sometimes not noted in the cases. The latter is concerned only with final judgments on the merits. Admitting the validity of the judgment, the rule is concerned merely with the scope claimed for it as an adjudication. Collateral attack applies to every order made in the proceedings whether on the merits or not as well as to the final judgment and denies any validity to such judgments and orders. See Bitzer v. Mercke, 111 Ky. 299, 63 S. W. Rep. 771.

The two doctrines are similar in that they relate to judicial proceedings or quasi-judicial functions. They do not apply to ministerial, legislative or executive actions. The courts decide what the law is, the legislature what it shall be. Cooley's Const. Limitations (7 Ed.) 132; Van Fleets Collateral Attack, Sec. 1; 1 Freeman on Judgments Sec. 305.

In the case before us the Drainage District was attempted to be created under the provisions of Sections 1098-1152 R. G. S., supra. The designation of the "Court or Judge thereof" as the person to consider the petition filed in the clerk's office for the establishment of a Drainage District did not vest in the court or judge any judicial authority. The duty which under the act he was required to perform was in no sense judicial. The act merely vested in the Judge a certain special statutory power to ascertain certain facts upon which the legislative will should act. The use of the words to "order, declare and decree the District to be a public corporation" imparted nothing of judicial verity to such order

of decree. Nor indeed could they have such an effect as the power to create drainage districts is a legislative function. See Bannerman v. Catts, 80 Fla. 170, 85 South. Rep. 336.

The power could have as validly been conferred upon any person or officer. Any attempt by the person so designated or the court or judge named to exercise other than the power conferred or authorized by the statute render the "order or decree" null and void and subject to collateral attack. See Murray v. Am. Surety Co., 70 Fed. 341, 17 C. C. A. 138.

If the statute had named the sheriff or tax assessor or tax collector as the person to consider the petition and "order and decree" the establishment of the District it would have been as logical to say that being executive officers the decree or order would be an executive order as to say that because the act designates the judge of the court as the person to make the decree it becomes a judicial order when made.

The contention therefore that the order of the judge establishing the district is not subject to collateral attack is not well taken because the order not being a judicial act nor quasi-judicial in character the principle which underlies the doctrine of res judicata or the rule against collateral attack does not obtain. "The rule is founded on deeper grounds of public policy in vindication of the dignity and authority of judicial tribunals constituted for the purpose of administering justice according to law and in order that their judgments and decrees may be invested with that force and sanctity which shall be a shield and protection to all parties and persons in privity with them. The rule, therefore has respect to the *court* and to its judgment and not to the parties." Crescent City Live-Stock Co. vs. Butcher's

Union Slaughter House Co., 120 U. S. 141, 30 L. Ed. 614, 7 Sup. Ct. Rep. 472.

The rule applies only to courts of general jurisdiction and not to courts of special jurisdiction. When special powers are given to a court of general jurisdiction such court in regard to such powers is treated as a court of special jurisdiction. When the power is given to a court over special matter which is not in the usual course of the common law and a mode for the exercise of such power is prescribed such mode must be pursued whether the tribunal be superior or inferior. Even in such cases jurisdiction must appear by the record and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it. But in the matter of ordering or decreeing a Drainage District to be established the "court or judge thereof" designated to make the order is not a *court* of either general or special jurisdiction. It is a mere fact finding body upon whose findings the legislative will acts when the facts exist which the statute declares shall bring the District into existence.

It is a general rule supported by practically all the cases in which the proposition is considered that the creation of political or taxing districts or municipal corporations is a legislative function and a statute which delegates the performance of such function to the judiciary and leaves to the discretion of that body the determination of the circumstances which will justify the creation of the district or corporation violates the constitutional provision separating the powers of the government into legislative, executive and judicial departments. What constitutes the delegation of legislative power to the judiciary is sometimes difficult to determine. Upon that question only are the courts not in accord.

The rule is that a statute providing for the creation of a political district or corporation which grants to a court the *exercise* of *any discretion* as to whether the political subdivision should be established, or requires of the court *any other assistance* than to determine whether the *conditions precedent* as declared in the statute have been *complied* with by the organizers of the district or corporation violates the constitutional limitation separating the powers of the government. That proposition is universally supported in this country even by the courts which have held the particular statute under consideration by it to be valid. In such cases by judicial construction the act involved was so interpreted as not to offend against the rule. Forsyth v. City of Hammond, 18 C. C. A. 175, 71 Fed. Rep. 443; People v. Nevada, 6 Cal. 143; People ex rel. Rhodes v. Fleming, 10 Colo. 553, 16 Pac. Rep. 298; Galesburg v. Hawkinson, 75 Ill. 152; Funkhauser v. Randolph, 287 Ill. 94, 122 N. E. Rep. 144; North v. Brd. of Education, 313 Ill. 422, 145 N. E. Rep. 158; State ex rel. Spencer v. Drainage Dist. No. 1, 123 Kan. 191, 254 Pac. Rep. 372; Jernigan v. Madisonville, 102 Ky. 313, 43 S. W. Rep. 448, 39 L. R. A. 214; State ex rel. Luly v. Simons, 32 Minn. 540, 21 N. W. Rep. 750; Brenke v. Borough of Belle Plaine, 105 Minn. 84, 117 N. W. Rep. 157; Yazoo Co. v. Grable, 111 Miss. 893, 72 South. Rep. 777; Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. Rep. 1023; Territory ex rel. Kelly v. Stewart, 1 Wash. 98, 23 Pac. Rep. 405, 8 L. R. A. 106; Re Village of North Milwaukee, 93 Wis. 616, 67 N. W. Rep. 1033, 33 L. R. A. 638; Harrington v. White, 131 Ark. 291, 189 S. W. Rep. 92; Searle v. Yensen, (Neb.), 226 N. W. Rep. 464.

The act of the legislature under which it was attempted to establish Interbay Drainage District was discussed by this court on the first appearance of the case here.

See Burnett v. Greene, *supra*. In that case quoting from the opinion of this court as written by Mr. Justice Wilson, Circuit Judge, in Bannerman v. Catts, *supra,* we approved the principle expressed by him in these words: "It is too well settled to admit of any argument that the drainage and reclamation of swamp and overflow lands are a proper exercise of legislative authority". Until that truth in government is expressly repudiated by this court it will stand if any regard is to be paid to the doctrine of *stare decisis*. The question involved is of supreme importance. The division of governmental powers into legislative, executive and judicial and the express prohibition against any *person* properly belonging to one of the departments *exercising* any powers appertaining to either of the others except where the constitution expressly provides otherwise, Art. II Const., is a principle in government well known not only to lawyers but is a matter of common knowledge.

As Mr. Justice Redick, in the case of Searle v. Yensen, *supra,* said: "It represents, probably, the most important principle of government declaring and guaranteeing the liberties of the people, and has been so considered, at least, since the famous declaration of Montesquieu that 'there can be no liberty * * * if the power of judging be not separated from the legislative and executive powers. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator; Were it joined to the executive power the judge might behave with all the violence of an oppressor' ".

The Constitutions of the respective States are the supreme law within their respective jurisdictions and are limitations of power. Authority must exist somewhere and this Court has repeatedly so held to determine

whether or not the limitations have been exceeded. That such power exists in the courts is now well established by the judicial and political history of this country.

Bearing in mind that an act of the legislature should be sustained as a valid exercise of legislative power and when attacked as invalid for constitutional reasons every presumption should be recognized in its favor and the act should not be declared void unless it appears to be so beyond a reasonable doubt we consider the question with a deep sense of our responsibility. State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; Campbell v. Skinner Mfg. Co., 53 Fla. 632, 43 South. Rep. 874; State ex rel. West v. Butler, 70 Fla. 102, 69 South. Rep. 771; Hunter v. Owens, 80 Fla. 812, 86 South. Rep. 839; State v. McMillan, 55 Fla. 246, 45 South. Rep. 882; Seaboard Air Line Ry. Co. v. Simon, 56 Fla. 545, 47 South. Rep. 1001; Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226.

An analysis of the act was given in the Burnett-Greene case, *supra*. It is useless to repeat here the discussion of the act in that case. The act clearly provides for objections to the formation or establishment of the district to be filed. If they are filed the discretion is clearly attempted to be vested in the judge as to whether he will order or decree the establishment of the district. Whatever may be the nature of the objections when filed he is required to determine whether the creation of the district and the "improvements to be made" will be for the "advantage of the owners of the real property therein" or whether "the same would be in the interest of the public health, convenience or welfare". It is clear that the act requires in certain cases, viz: where objections have been filed, that the judge of the court shall determine the legislative question whether the establishment of the district would be in the interest of

the public health, convenience or welfare. It is also perfectly clear that the power is attempted to be vested in him to ''decree or order'' the establishment of the district even if he should be of the opinion that its establishment may not be in the interest of the public health or convenience but the ''improvements to be made'' would be for the ''advantage of the owners of the real property therein''. This latter power is not one which even the Legislature could lawfully exercise, for the exercise of such power would in no wise be an act of government. It would simply be an arbitrary and despotic effort to improve private property by the exercise of the power of taxation to that end.

The doctrine is so well settled, so thoroughly entrenched against the sophistry of those who favor a government by men instead of by laws that no precedents are necessary to support it, namely: ''The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend''. Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716.

It would have been within the power of the Legislature to delegate to some person the power to ascertain whether the lands embraced within the proposed district were a contiguous body of wet and overflowed lands and that the petition was signed by a majority in numbers of the holders of the land or a majority in acreage of the holders of such lands upon which finding the legislative will to create the law should operate, but the question of political and legislative character, whether the establishment of the district and the improvements to be made thereunder would be in the interest of the public health, convenience or welfare cannot constitutionally be delegated.

Where the operation of the law is conditioned upon the existence of certain facts the Legislature may submit to the judge or to any person the determination of those facts but it can go no further and delegate to the judge the power to determine whether the facts being establish the formation of the district will or will not be in the interest of public health, convenience or welfare. Under the provisions of the act involved it is clear that the Judge of the court is in certain circumstances, the filing of objections, authorized to determine what facts other than those declared by the statute should form the basis for the operation of the law. State v. Duval Co., 76 Fla. 180, 79 South. Rep. 692.

If the establishment of Drainage Districts is a legislative function the Legislature must determine the facts upon which the legislative will to create a drainage district shall operate. The determination of those facts being a legislative power it is exceedingly doubtful if that power even may be exercised by a person properly belonging to the judicial branch. Art II, Const.

It is a doctrine well established and frequently reiterated by the courts that the functions of the legislature must be exercised by it alone and cannot be delegated. It cannot delegate the power to fix the terms and conditions upon which public corporations may be created. See 12 C. J. 839 and authorities cited; Appeal of Norwalk St. Ry. Co., 69 Conn. 576, 37 Atl. Rep. United States vs. Louisville & N. R. Co., 176 Fed. Rep. 942; Beasley v. Ridout, 94 Md. 641, 52 Atl. Rep. 61; Boston v. Chelsea, 212 Mass. 127, 98 N. E. Rep. 620.

The difficulty lies not in determining the governing principle but in its application to concrete cases.

The court may no more exercise a legislative power than the legislature may exercise a judicial power. Wilkinson v. Leland, 27 U. S. 627, 7 L. Ed. 542; Brown v.

O'Connell, 36 Conn. 432, 4 Am. Rep. 89; United States v. Todd, 13 How. (U. S.) 53, 14 L. Ed. 47; Ex parte Siebold, 100 U. S. 393, 25 L. Ed. 725.

The power which the court or judge is required to perform under the act in question is not in any phase of its exercise a judicial power and for that reason the validity of the act cannot be maintained. Determining what facts exist upon which the legislative will shall operate in the matter of creating a public agency is not a judicial function.

In this view of the case we hold that the Drainage District was not established. It could never have had a de jure existence, therefore cannot be a de facto public corporation.

BUFORD, C.J., concurs.

---

## STATEMENT BY THE COURT

After the original hearing had been had, and after the opinion prepared by MR. JUSTICE WHITFIELD had been filed in this case on 17th day of June, 1931, it was learned by MR. JUSTICE WHITFIELD that a certain piece of property in which he had an interest was situate within the boundaries of the special taxing district involved in this case, thereupon, by request of MR. JUSTICE WHITFIELD, and upon his certification to the other members of the Court that he considered himself as having been, unknown to himself, disqualified to participate in the decision of this appeal, at the time the opinion prepared by him was filed, a rehearing was granted in this cause by the Court sua sponte, and the appeal assigned for rehearing and reargument before this Court with a Circuit Judge participating in the place of MR. JUSTICE WHITFIELD.

The following proceedings occurred after a rehearing and reargument of this cause, because of the circumstances above stated:

## On Rehearing.

Lewis, Circuit Judge.—This suit was brought by bill in chancery to quiet the title to lands in the drainage district against assessments for drainage purposes, upon allegations of the invalidity of the Statute and of the proceedings hereunder, by which bonds were issued and assessment of taxes made to pay the bonds, the proceeds of said bonds being used to drain lands in said district. In effect, the prayer is that the establishment of the drainage taxing district and the assessments made, be adjudged invalid and a cloud upon complainants' title to lands therein; that collection of the drainage taxes be permanently enjoined, and for general relief. A temporary restraining order was affirmed.

Burnett v. Green, 97 Fla. 1007, 122 So. 570.

The decree rendered on final hearing upon which this appeal was taken, in effect holds the statute to be invalid; that all of the proceedings had and the bonds issued under the Statute are invalid; that the proceedings for the validation of the bonds are invalid; that the benefits actually accruing to the owners of the lands in the district by the drainage operations amount to $753,125.50 and no more; and the decree vacates and declares null and void the decree establishing the drainage district; adjudges that the right and interest of the several defendants, known or unknown, in and to the lands in the district is a proportionate several interest in each of those of them holding bonds issued by said district in any equitable lien for $753,125.50 in the proportion that each bondholder bears to the entire bond issue. The drainage tax records and books are cancelled and the collection of the drainage taxes permanently enjoined with provision for ascertaining the respective individual rights in the equitable lien decreed to be on the lands for the proportionate amounts allowed on the total bond issue.

The drainage district was established in substantial compliance with the requirements of the Statute, therefore, if the Statute is valid, the decree should be reversed for appropriate proceedings. The record does not clearly establish illegality of all of the bonds issued, even though the legality of the particular transactions and the validity of the specific assessments as made may be challenged if the right to do so has not been lost by waiver, acquiescence, or otherwise.

The validity of Chapter 5458 Acts of 1913 of general drainage law, Sec. 1451 (1908) et seq., C. G. L., has been adjudicated in McMullan v. Newmar Corporation, 100 Fla. 566, 129 So. 870; Duval Cattle Co. vs. Hemphill, 41 Fed. (2nd) 433. See also Pinellas Drainage District v. Kessler, 69 Fla. 558, 68 So. 668; State ex rel. v. Walters, 75 Fla. 584, 78 So. 671; Townes v. State ex rel., decided at June, 1931, term.

Article V, Sec. 11, of the Constitution provides that "the Circuit Courts shall have * original jurisdiction of," stated matters, "and such other matters as the Legislature may provide."

Chapter 6458 confers upon the Circuit Court "original and exclusive jurisdiction" to determine upon appropriate hearing whether "the establishment of the state drainage district and improvements to be made thereunder will be for the advantage of the owners of the real property therein, or that the same would be in the interest of the public health, convenience or welfare".

The Statute is the general law designed to operate throughout the State wherever defined conditions exist. The authority given to the Circuit Court by the Statute is not to determine what the law shall be, or upon what subjects the law shall operate; but it is merely to ascertain whether in a particular locality the conditions exist with reference to the subjects, upon which the gen-

eral law complete within itself, may operate by its own force. It being impracticable for the Legislature to make these determinations itself, and, such determinations not being an exclusive legislative *power,* the function to so determine being administrative or quasi-judicial in its nature, may under Sec. 11, Art. V, of the State Constitution, be conferred upon the Circuit Courts within the limitations defined in the Act without violating the provisions of Art. II, of the State Constitution, that ''no person properly belonging to one of the departments shall exercise any *powers* appertaining to either of the others,'' with exceptions immaterial here.

Where the taxing district is not established by the Legislature itself, but is to be formed by procedure under the statute, appropriate notice and opportunity to be heard must be given to afford due process of law; and such procedure may be in a judicial tribunal when not forbidden by organic law.

> 19 C. J. 615, McMullan v. Newmar Corporation, supra.
>
> Houch v. Little River Drainage Dist., 239 U. S. 254, 281 U. S. 74.

A more recent case, Memphis & Charleston Railroad Co. v. Pace, 75 Law. Ed. 315. See also St. Louis & S. W. R. R. Co. v. Nattin, 277 U. S. 157, 72 Law. Ed. 830; Valley Farms Co. v. Westchester Co., 261 U. S. —, 67 Law. Ed. 585; Miller & Lux v. Sacramento & S. J. Drainage Dist., 256 U. S. 129, 65 Law. Ed. 859; Missouri Pacific Railroad Co. v. Western Crawford Road Improvement Dist., 266 U. S. 187, 67 Law. Ed. 237.

If the procedure is in an administrative tribunal it is subject to judicial review. If the procedure is in a judicial tribunal it has the attributes accorded to it by the law.

There is nothing in the Constitution forbidding a stat-

ute to authorize a finding by the Circuit Court that the establishment of a drainage district "will be for the benefit of the owners of the real property therein," or that the district "would be in the interest of the public health, convenience, or otherwise." Advantage or benefit to the owners of real estate in the area afford the considerations and reasons for establishing drainage districts under authority of statutes.

Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527.

The decree is reversed and the cause remanded for appropriate proceedings.

TERRELL AND DAVIS, J.J., concur.

BROWN, J., concurs specially.

BUFORD, C.J., AND ELLIS, J., dissent.

WHITFIELD, J., disqualified.

BROWN, J., concurring specially.—In addition to what has been said above, the writer is still inclined to the view expressed in the short dissenting opinion on the first appeal in this case, to the effect that in so far as the bill attacks the legal existence of the drainage district as a public corporation, it is a collateral attack, under the principles laid down in State v. City of Sarasota, 92 Fla. 563, 109 So. 473, and West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361; quo warranto by the State being the proper remedy in such a case. However, I might say that I concur in the views, above expressed that the statute under which the district was organized is a valid statute, and that the district was established in substantial compliance with the statute. Certainly, under those circumstances, the legal existence of the district is not subject to attack otherwise than by quo warranto instituted by the State. See 97 Fla. 1007, 1031; 122 So. 570, 578. There are other questions presented by the bill and demurrer thereto, and the answer and the evidence, which the above opinion evidently does not deem to have been

presented by the rulings of the court below, and hence not ruled on in this appeal upon which I express no opinion.