JULIA A. CRAFT, *Appellant,* v. AMERICAN AGRICULTURAL
· CHEMICAL COMPANY, A CORPORATION, *Appellee.*

## Opinion Filed January 18, 1921.

1. When a married woman knowingly permits her husband to manage or control her property, or allows him so to deal with it as to induce others to believe that he is acting as her authorized agent, such facts are sufficient to establish the agency in favor of the persons who deal with him in such belief.

2. Whatever the social relations between a husband and wife may be, so long as she permits him to occupy, manage and control her separate statutory property, he is her agent. This agency terminates only when she takes the management of her property out of his hands, and personally assumes it, or appoints a new agent. And so long as she permits her husband to manage her separate property, that property will be chargeable in equity for the purchase price of goods and materials purchased by him in the due course of his management, and for its benefit.

3. In case a doubt is raised by a decided conflict in the testimony, and there is no outstanding feature of the case resolving the doubt in favor of either party, an appellate court will not disturb the finding of the chancellor.

An Appeal from the Circuit Court for DeSoto County; George W. Whitehurst, Judge.

Decree affirmed.

*Timberlake & Robbins,* for Appellant;

*W. W. Whitethurst,* for Appellee.

SIMMONS, Circuit Judge:—The appellant owns three orange groves in DeSoto County. She is a married

woman. In the early part of 1914 she was estranged from her husband, H. M. Craft, and they were living apart from each other—she in Tampa, he on one of the groves. He was, and for a long time had been, managing the groves, buying supplies, selling fruit, and so forth.

At two different times during the late winter and early spring of 1914 the appellee furnished to H. M. Craft certain fertilizers to be used on the groves belonging to his wife, the total amount so furnished being ten tons, at a total price of $402.84. The fertilizer so furnished was used on the groves of appellant. It was sold to H. M. Craft by W. E. Wilder, an agent of the appellee resident in DeSoto County. Craft executed a note for the purchase price in his own name, but no effort was ever made to collect the note, as such.

In October, after the fertilizer was bought and applied in the spring, the appellant obtained a divorce from her husband, and soon thereafter ousted him from the groves. She is not positive as to whether or not she received the proceeds of the 1914 crop of oranges, though she is under the impression that she obtained only $300.00 of the proceeds of that crop. She remembers that it was obtained by threats to her husband that she would apply for a Free Dealer's License, which threat indicates that she had in mind some previous crop, because she was a *feme sole* before the orange crop was matured in 1914; though, of course, her husband might have sold the crop before it was matured.

All these facts are undisputed. But there is one other fact concerning which there is sharp conflict. W. E. Wilder, brother of U. V. Wilder, appellee's agent, testified that after H. M. Craft had applied to his brother for the fertilizer, he went to see the appellant, at his brother's

request, to inquire of her whether or not she would authorize and let the groves "stand good" for the price. In response to this question she replied, so this witness testified, that if he would arrange with his brother to let Mr. Craft have the fertilizer, she "would appreciate it." His testimony upon this point was direct and positive. The appellant just as directly and positively denied that any such conversation took place.

The appellee filed a bill in equity in the Circuit Court of DeSoto County for the purpose of subjecting Mrs. Craft's groves to the payment of the amount due for the fertilizer, and the facts and dispute here briefly stated were brought out at the hearing before the Special Master. Upon the final hearing the Chancellor found the equities to be with the appellee, and that it had a lien upon the appellant's groves for the price of the fertilizer. From that decree the appellant appealed, and all the assignments of error run to the sufficiency of the evidence.

Towering above all the conflict and controversy of the case stands one unimpeachable fact, this, namely: Mr. Craft was in charge of the orange groves as agent for his wife, and as such agent was charged with their cultivation and care. This laid upon him the duty of procuring and applying fertilizer in such quantities and at such times as it was necessary, and there is no dispute as to its necessity, quantity or quality in this instance.

True, the relations between Mrs. Craft and her husband were so strained that they were living apart and on the verge of divorce. But the appellee knew nothing of these strained relations. In fact, the appellant testified that at that time she had made no public statement of these difficulties, although she insists that her husband was on the groves against her will. The groves being her separate

statutory property, she had the legal right at any time to oust her husband from their management. Florida Citrus Exchange v. Grisham, 65 Fla. 46, 61 South. Rep. 123. But he was still there, managing the property, buying and selling, as he had been for years.

Whatever the social relations between a husband and wife may be, so long as she permits him to occupy, manage and control her separate statutory property, he is her agent. This agency terminates only when she takes the management of her property out of his hands, and personally assumes it or appoints a new agent. And so long as she permits the husband to manage her separate property, that property will be chargeable in equity for the purchase price of goods and material purchased by him in the due course of his management, and for its benefit.

The doctrine that, even in the absence of statute, the wife may appoint her husband as her agent to manage her separate property, seems too well settled to require a citation of authority. 25 Am. & Eng. Ency. of Law, 369. It is equally well settled that this appointment may be proved by such evidence and inferences as are requisite or admissible in proving any other agency.

When a married woman knowingly permits her husband to manage or control her property, or allows him so to deal with it as to induce others to believe that he is acting as her authorized agent, such facts are sufficient to establish the agency in favor of persons who deal with him in such belief. 25 Am. & Eng. Ency. Law 370, and numerous cases there cited.

Aside from the question thus disposed of, there is the direct and positive testimony of W. E. Wilder that Mrs. Craft actually participated in the purchase. This is posi-

tively denied by her, it is true, but there is no outstanding feature of the case which resolves in her favor the doubt raised by this conflict, and in such cases an appellate court will not disturb the finding of the chancellor. Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231.

It is contended by one of the assignments of error that there is no proof to show that any of the fertilizer was used upon one of the groves covered by the decree. But the testimony of W. E. Wilder is direct, positive and uncontradicted that some part of the fertilizer was used on each of the three groves in question; and there is no dispute, either in the pleadings or the testimony, that Mrs. Craft owned three orange groves, and that they are properly described in the bill of complaint.

The final decree of the court below is affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the decree appealed from, be and the same is hereby, affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.