HAZEL B. GIBSON, a feme sole, v. W. W. INGALS and ROY B. GIBSON.

161 So. 395.
Opinion Filed May 1, 1935.

PER CURIAM.—In this cause Mr. Chief Justice WHITFIELD, Mr. Justice ELLIS and Mr. Justice TERRELL are of the opinion that the decree of Circuit Court should be reversed; while Mr. Justice BROWN, Mr. Justice BUFORD and Mr. Justice DAVIS are of the opinion that the said decree should be affirmed. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the decree should be affirmed or reversed, and there is no pros-

pect of an immediate change in the personnel of the Court, the decree should be affirmed; therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 So. R. 51, that the decree of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

WHITFIELD, C. J.—The diamond ring which was pledged for the debt of the husband was the separate property of the wife, and "her consent" to such pledge was not "given by some instrument in writing" as required by the Constitution. Estoppel should not be adjudged against the owner of the ring when the record shows usury by the pledgee in the transaction.

ELLIS, P. J.—The appellant, Hazel B. Gibson, sought by bill in chancery to declare a certain transaction, between W. W. Ingalls and Roy E. Gibson, the quondam husband of the appellant, in which the latter while he was appellant's husband procured a loan of nine hundred dollars from Ingalls and pledged as security for the repayment thereof a diamond ring of the appellant, void on the ground of usury, which the appellant alleged in her bill amounted to more than a charge of twenty-five per centum per annum upon the loan.

It was also later contended that the transaction was void as being in violation of Section 1 of Article XI of the Constitution, which provides as follows: "All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterward by gift, devise, bequest, descent or purchase shall be her separate property and the same shall not be liable for the debts of her husband with-

out her consent given by some instrument in writing executed according to the law respecting conveyances by married women."

The alleged usurious phase of the transaction has been abandoned because in appellant's brief the question is not included in the "Statement of Questions Involved,' as required by Rule 20 of the Rules Governing Practice in the Supreme Court of Florida, which became effective January 1, 1931. The rule was adopted in order that the Supreme Court might be able to obtain an immediate view of the nature of the controversy and where no brief has been filed by the appellant in accordance with the rules the cause may be dismissed or the judgment affirmed, unless upon motion for good cause shown the Court sees fit to permit additional time for the filing of new briefs in compliance with the requirements of the rule. The rule is mandatory; made so by its own provisions.

It follows from the provisions of the rule that where a question of law is expressly raised by an assignment of error and not stated in the brief in the "Statement of Questions Involved" the assignment is waived.

It is not necessary to make each assignment of error separately the basis of one of the questions in the "Statement of Questions Involved." Indeed the rule contemplates that one question involved may include several assignments of error.

Paragraph (f) of the rule entitled "Argument" provides that the portion of the brief containing the argument shall be divided into as many parts as there are "questions" to be argued and each part shall refer to the specific assignments of error alleged to raise the particular question discussed.

The brief of appellant, however, does not contain a discussion of that phase of the case involving usury.

The original bill definitely attacked the transaction as usurious, alleging that Ingalls contracted to receive and did receive a sum greater than twenty-five per cent. interest on the amount advanced by him to Gibson, appellant's husband, at the time of the transaction.

The original bill was filed in August, 1932, and an amended bill was filed in March, 1933, before an answer was interposed. The amended bill likewise attacked the transaction because of usury and because the property being the separate property of the appellant was not liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women. That attack was also made in the original bill, but was more fully presented in the amended bill.

The facts in the case are that in November, 1931, Mrs. Hazel B. Gibson was the owner of a diamond ring. The diamond was a four-carat, sixteen-point, stone set in a platinum mounting valued at approximately four thousand dollars, according to the testimony of Mrs. Gibson. Mr. Gibson was starting in business and needed money with which to pay for part of his merchandise which he had already purchased. He applied to his wife for use of the ring to hypothecate as security for a loan of nine hundred dollars, which he obtained through Mr. Retalick, a cashier of the First National Bank in Miami.

Mrs. Gibson hesitated for a while about lending her ring to her husband for the purpose for which he intended to use it. When he said to her that if she did not give him the ring for that purpose she "wouldn't eat," she said she let him have it.

Her consent to the use of the ring for the purpose for which it was used was not evidenced by any instrument in writing of any description. The ring was taken by Mr. Gibson and hypothecated as security for a loan of nine hundred dollars obtained by him from Ingalls, the defendant. It does not appear that Mr. Ingalls knew at that time that the ring was the property of Mrs. Gibson.

Testimony was taken after the answer of the defendant was filed, in which he denied that the property was the separate property of Mrs. Gibson, and denied that Mr. Gibson, informed him that it was her separate property, or that he came into possession of it with "full and complete knowledge that the title and legal ownership was vested in complainant, and that the same was her spearate property."

About nine months before the amended bill was filed, Mrs. Gibson obtained a decree of divorce from her husband.

The Chancellor found that the ring was delivered into the possession of Mr. Gibson by his wife for the "express purpose of pledging the same and procuring a loan thereon for their mutual benefit" and that Mrs. Gibson "participated in the proceeds of said loan"; that the ring was lawfully pledged by Mrs. Gibson and her husband to the defendant, Ingalls, to secure payment of a loan in the sum of nine hundred dollars; that the usury in the transaction was not established and that the equities in the case were with the defendant, Ingalls. The ring was ordered to be sold and the proceeds applied to the payment of the debt and interest and the surplus of such proceeds of sale to be paid over to the complainant. The bill of complaint was dismissed at complainant's cost.

The Chancellor's view of the law as expressed in the decree, and which he applied to the facts as he found them

to exist was: first, that the Constitution does not require transfers of the wife's personal property to be made by an instrument in writing where the transfer is made with her knowledge and consent in obtaining a loan for her benefit and where she participated in the proceeds and where the transaction as in this case is not one which by other provisions of the law is required to be evidenced in writing; second, the provisions of the Constitution relating to the separate property of married women while "intended to protect the property of the wife against seizure and sale under legal process to satisfy debts of the husband, were not intended, and do not have the effect, to void or nullify lawful contracts as to the disposition of the wife's personal property which have been made with her knowledge and approval."

The ring was the property of Mrs. Gibson. She allowed her husband to use it for the purpose of pledging it as security for a loan to be obtained by him in an amount as to which she was not informed and as to the terms of which she was not advised. We do not agree with the Chancellor that the evidence shows that she participated in the proceeds of the loan or obtained any benefit from it at all.

It cannot be maintained that because he vaguely threatened to refuse to contribute to her support unless she allowed him to use the ring to obtain a loan of money for use in his business and afterwards she continued to be maintained by him, she may be said to have participated in the proceeds of the loan. In that way any wife may be said to benefit by the business activities of her husband and participate in the proceeds of his business operations. It may be that a wife fares better or worse, so far as actual living conditions are meant, according to the financial success of her husband, and in that general sense may be said

to participate in the profits of every business transaction of his, but that is not the interpretation to be given the phrase "participated in the proceeds" of the loan when considering a transaction like the one under consideration, where the husband, to secure the payment of a loan to be made to him for use in his business threatens to withhold from his wife the support which the law requires of him to furnish to her, obtains the use of her separate personal property to pledge as such security.

Such an argument as the one which seeks to maintain the proposition that in a legal sense the wife benefits by and shares in the proceeds of the profits or shares in the losses of her husband's business activities leads to the result of making her in law a partner or joint adventurer with her husband in all his business activities to the extent at least in which her separate personal property may be used by him with or without her consent in his business activities. Such is not the law of this State, nor has it been so understood since the adoption of the Constitution of 1885 containing the article and section above quoted.

In the case of Springfield Company v. Ely, 44 Fla. 319, 32 South. Rep. 892, the Supreme Court of this State, construing the quoted section of the Constitution, said:

"The convention in adopting and the people in ratifying that instrument, must be assumed, had in mind the fact that certain formalities were required for the conveyance of married women's real property, that were not required for the conveyance of their personal property, and that the Legislature possessed the power to change or alter the forms of and requisites for the conveyance of either or both at pleasure. The section under consideration though dealing with both classes of property and with the liability of both classes of property for the husband's debts simply

requires the consent of the wife to be given by some instrument in writing—the instrument to be executed according to the law respecting conveyances by married women, whatever that law should be at the time the consent is given. The proper interpretation of the Constitution requires us to hold that the consent of the wife to be effective to render liable her separate statutory property to her husband's debts *must be in writing,* and must be executed according to the law respecting conveyances by married women appropriate to the conveyance of the class of property to which the consent releases."

In that case the property pledge by the husband consisted of certain certificates of the shares of stock in Southern Savings & Trust Company, which shares were the constitutional separate personal property of Mrs. Ely. She executed and delivered to her husband an instrument in writing authorizing him to use the certificate of stock as collateral security for the payment of a promissory note given by her husband to the Southern Savings & Trust Company. The promissory note and the written instrument executed by Mrs. Ely bore the same date. See also Fritz v. Fernandez, 45 Fla. 318, text 333, 34 South, Rep. 315, where this Court made a distinction between the wife's power of disposition of a purely equitable estate and of her purely statutory property. The Court said:

"In the latter case the power of disposition is regulated by the statutes which create the separate statutory property."

In that case the Court, construing Section 2071, Revised Statutes 1892, now Section 5867 C. G. L. 1927, providing that the property of the wife shall remain in the care and management of the husband, said:

"We do not think that Section 2071 Rev. St. 1892, thrusts

the husband *in invitum* into a trust relation to his wife's property, though, of course, he may become such a trustee by his dealing with her property." The Court also said that: "courts of equity recognize the right of a married woman to make gifts to the husband when the circumstances show that there had been no fraud, imposition, oppression, or undue influence practiced upon the wife, no advantage taken of her, and the gifts are such as, under the circumstances, are fair and reasonable."

So a wife may become a creditor of her hsuband, said the Court, and her rights as such will be enforced against him and his representatives. In the same case it was said:

"If a wife should unite with her husband to pledge her estate, or otherwise to raise a sum of money out of it to pay his debts or to answer his necessities, whatever might be the mode adopted to carry that purpose into effect, the transaction would, in equity, be treated according to the true intent of the parties."

In the case of Cobb v. Bear, 57 Fla. 370, 49 South. Rep. 29, this Court again construed the constitutional provision above quoted and said:

"The consent of a married woman to be effective to render her separate statutory property liable for her husband's debt must be in writing, and must be executed according to the law respecting conveyances by married women appropriate for the conveyance of the class of property to which the consent relates."

In the case of Blood v. Hunt, 97 Fla. 551, 121 South. Rep. 886, Mr. Presiding Justice WHITFIELD speaking for the Court ably traced the historical development of the law in this State upon the subject of the rights of married women in relation to their separate property to its culmination in Article XV, Sections 1 and 2, of the Constitution

of 1885. The question presented in that case was whether a mortgagee to whom a married woman had duly mortgaged certain real estate which was her separate property might in addition resort to the equitable process provided by Section 2 of Article XI, Constitution of 1885, of subjecting in equity the property purchased by the married woman of any other separate property of hers for the debt secured by the mortgage. It was decided that he could not.

Underlying the organic law of this State upon the subject of a married woman's rights in relation to her separate property is the existence of the incapacity of a married woman at common law to make a contract binding on her personally. The purpose of the Constitution was to facilitate the management and handling of her property by her and enable her to the extent of it to acquire credit and bind herself by contract or instruments in writing in relation to it.

The Constitution, however, placed certain restrictions upon the use of her property for purposes of credit either for herself or her husband, with which compliance is required before it may be subjected in equity to the payment of the debts of either.

In the case under consideration the evidence does not sustain the theory that Mrs. Gibson became either a co-partner of her husband or participated with him in the joint adventure of obtaining a loan from Mr. Ingalls for business purposes. Nor does it show that she "participated in the proceeds of the loan" in the legal significance of that phrase. The evidence does not show that her consent to use the property was freely or voluntarily given, but on the contrary, that she was coerced by a veiled threat from her husband to withhold his support of her and that no

instrument in writing was executed by her evidencing her consent to the use of her property as security for her husband's debt.

The contract which the husband made to pay Mr. Ingalls is not sought to be annulled by the complainant. She merely asserts that her property taken from her by her husband in the manner alleged is not liable for the debt incurred by him because her consent was not obtained in writing for it to be so used; that he has no title to the property; that its possession by him was taken by coercion and undue advantage of her and her constitutional rights with reference to the property were ignored by him.

There was no transfer of the property by the complainant. The use of it as a pledge to secure a debt to be incurred by her husband for his own business purpose was known to her, but it cannot be said in the circumstances that her consent was obtained except by a sort of coercion and advantage of her. If indeed knowledge and consent of the wife in such case are sufficient to take the case out of the constitutional provisions which make no distinction between the two classes of property in requiring consent by the wife for such purpose to be "by some instrument in writing."

Section 5867 C. G. L., *supra,* does not vest the husband with the title to his wife's personal property and the Constitution forbids its being used to pay his creditors against her will; that her consent to its being so used must be evidenced by some instrument in writing executed by her. If the promissory note executed by her husband had contained an agreement that the ring should be pledged as security and the wife had signed it, another case would have been presented. See Shoemaker v. Waters, 59 Fla. 414, 52 South. Rep. 586.

In this view of the transaction it follows that the decree appealed from is erroneous and should be reversed.

WHITFIELD, C. J., and TERRELL, J., concur.

BROWN, J.—As I see it, the record affords a basis for upholding the Chancellor's conclusion that the appelant was estopped from questioning the rights of appellee, Ingalls, from looking to the ring as security for the payment of the loan made by him to appellant's husband. I fully realize the closeness and difficulty of the question involved. The Constitution plainly says that the separate property of a married woman shall be liable for the debts of her husband without her consent given by her in some instrument of writing; but we have held in the case of Abell v. Town of Boynton, 95 Fla. 984, 117 So. 507, that constituional rights, designed for the protection of the property rights of the individual, may be waived, or that the individual may by his conduct estop himself to assert such constitutional rights.

At the time this loan was made, early in November, 1931, Mrs. Gibson was living separate and apart from her husband. She had ceased to live with him in July, 1931, but he was continuing to contribute to her maintenance and support, and when this loan was made the husband was behind in the payments which he was making to his wife for her support. At that time appellant had in her possession the diamond ring in question, which she claims was worth from $3,500.00 to $4,000.00, and which her husband had given to her several years before. Early in November, 1931, appellant's husband, who had just opened a jewelry store, needed money to pay for watches and other merchandise coming in, and asked appellant for the ring to secure a loan which he proposed to get. While being examined in regard to this matter, appellant testified as follows:

"A. I loaned it to him in November, November 2, 1931.

"Q. For what purpose?

"A. He was starting in business and he needed some money and he asked for the ring to get a loan in order to start in the business.

"Q. Will you tell the circumstances under which you loaned Mr. Gibson the ring?

"A. Mr. Gibson asked me for the ring so he could borrow some money on it. Said I would get it back; that he didn't want the ring, but it was merely for a loan. I debated quite some time and he said if I didn't give him the ring I woudn't eat, so I gave it to him.

"Q. Mr. Gibson was supporting you at that time?

"A. Yes.

"Q. And you let him have this ring for the purpose of procuring a loan on it to go into business?

"A. Yes.

"Q. You expected to continue to receive support from him from the operation of the business?

"A. Yes.

"* * *

"Q. He told you he needed the ring to borrow money on, otherwise you wouldn't have let him have it?

"A. That is right."

It thus appears that appellant herself expected to obtain a personal benefit from the loan which she thus made it possible for her husband to secure. At the time she delivered the ring to her husband, thus transferring possession to him, she admits in her testimony that her husband did not have any means of livelihood that she knew of other than the store which he was operating, and it was from the operation of that store, which he opened largely by means

of the loan which he procured on the ring, that he was supporting her. After he opened the store and secured the loan, her husband gave her $100.00 in addition to her regular support. In this connection it must be remembered that actual physical possession of corporeal personal property is a *prima facie indicia* of ownership, and this the wife conferred upon her husband for the known purpose for which he used it—to secure this loan.

The appellant did not become acquainted with the lender, W. W. Ingalls, until a few months after the loan was made. Her husband did not know Mr. Ingalls in the transaction at all, but had dealt solely through Mr. Retalick, whom he had asked to procure a loan for him. He left the ring with Retalick, who delivered it to Ingalls as security for the loan. Thereafter, in January, 1932, appellant's husband procured through Retalick an extension of the maturity of the loan and made an interest payment to Retalick.

Ingalls first knew of Mrs. Gibson in the transaction when in March, 1932, a few months after the loan was made, appellant, Hazel B. Gibson, talked with the pledgee, Ingalls, and asked him if he would sell the ring, letting her apply off the loan and have the balance of the money. Ingalls told her he would like to dispose of it if he could sell it and was agreeable to giving her the amount over the loan, but that he did not want to do anything about recognizing her interest in the transaction without her hsuband's consent. Mrs. Gibson then went to her husband and procured a letter from him to Ingalls in which letter her husband informed Ingalls that "the entire equity and ownership in said property, subject to your rights as creditor, is now vested in and belongs to Mrs. Hazel B. Gibson, and whenever your loan is paid by her or by anyone else for her, or if there is

any surplus from any sale, such property or moneys belong to Mrs. Hazel B. Gibson."

Appellant procured a divorce from her husband on June 7, 1932, and in August, 1932, filed her original bill against her husband and appellee, W. W. Ingalls, predicating her right to have the ring restored to her upon the single theory that usury had been charged by Ingalls upon the loan to her husband and that the transaction was void. Seven months later she filed an amended bill in which it was alleged, in addition to the claim of usury, that the pledged property was not subject to the lien of the pledge to secure the loan to her husband because appellee had not given her consent thereto by instrument in writing. The Chancellor in his final decree found against the appellant on both of these counts.

It would seem that the facts and circumstances above outlined are sufficient to create an estoppel against the married woman which would prevent her from attacking the validity of the pledge here involved, in a court of equity.

There is another well settled principle, which is really a part of the law of estoppel and which has a bearing on this case, namely, that in cases when one of two innocent persons must suffer a loss, he or she who is the cause or occasion of that confidence by which the loss has been caused ought to bear it.

The wife, by her conduct in permitting her husband to so deal with her property as to induce others to believe that he is acting as her authorized agent, may be estopped to deny the agency of the husband to manage and control her separate property where her property is sought to be charged in equity for the price of goods and materials purchased by him for the benefit of such property, as was held in Craft v. American Agri. Chem. Co., 81 Fla. 55, 87 So.

41. And she may be bound by her conduct in acquiescing in the sale of her personal property by her husband so as to justify a finding that she had joined in the sale and transfer of title and possession. McNeil v. Williams, 64 Fla. 97, 59 So. 562, and cases there cited.

When a wife permits her husband to hold the record title to her realty, or permits him to use her money as his own to invest it in his own name and thereby obtain credit on the faith of his being the owner of the same, she is esteemed in equity to assert her title thereto as against one extending credit to the husband in reliance on such ownership. Russ v. Blackshear, 88 Fla. 573, 102 So. 749; Hobbs v. Frazier, 61 Fla. 611, 55 So. 848; Weaver-Lughridge Lbr. Co. v. Kirkland, 99 Fla. 427, 126 So. 773; Warner v. Watson, 35 Fla. 402, 17 So. 654.

In Commercial Credit Co. v. Parker, 101 Fla. 928, 132 So. 640, this Court held that:

"Where an owner consigns personal property to a dealer in such goods with express or implied authority to sell, or delivers or consigns to another personal property with *indicia* of ownership or of authority to sell, but with title reserved in the owner until the payment of the purchase price, a purchaser who pays value for such goods and gets possession thereof without notice of the terms or conditions of the original delivery, consignment or sale, obtains a good title as against the original owner, which will in general prevail against the latter's reserved title."

And in Edgar v. Bacon, 97 Fla. 679, 112 So. 107, we said that "the protection which the law throws around married women, by making certain contracts unenforceable against them personally, was intended to operate as a shield of defense and not as a sword of offense."

For the reasons above pointed out, in addition to some

of those given in the opinion of Mr. Justice DAVIS, I think the Chancellor's decree should be affirmed.

BUFORD and DAVIS, J. J., concur.

DAVIS, J.—In this case the defendant below set up that the negotiations leading to the pledge of the ring in controversy had been conducted through a third party from whom the pledgee had received the ring as security and to whom he had paid the money for the purpose of completing the loan for which the ring was pledged as security, without notice or knowledge that the married woman, who claims to have retained her ownership of the ring, although delivering it to her husband to be used for the very purpose that he did use it, namely, borrowing money on it, had or claimed any interest in the pledged property. The pledgee denied usury in the transaction and the Chancellor found in favor of the pledgee on that issue.

This Court has held that a married woman will not be protected or sustained in a course of conduct calculated to involve an innocent purchaser, and throw upon him (the innocent purchaser) the loss to arise from improper action of her hsuband. Maiben v. Bobe, 6 Fla. 381. There was no law to prohibit the gift to the hsuband by the wife of the ring here in controversy nor the consummation of that gift by manual delivery of the ring by the wife to the husband at the time of such gift. The right to make an outright gift of the ring included the right to make a conditional gift of it—that is, the right to give the ring to her husband to use it for any purpose that might be of benefit to him, including the borrowing of money on it.

In this case the pledgee was an innocent taker of the ring under a pledge and delivery of it by the husband to the pledgee under circumstances that in no wise suggested that there had been any fraud or duress practiced by the

husband on the wife antecedent thereto, even if we accept as indisputably true the wife's version of this whole transaction and thus disregard the circumstance that the Chancellor failed to see any merit in the wife's claim when the case was tried before him.

The tendency of modern authority is strongly towards the liberal enforcement of estoppel against married women. And if there were nothing else to this case besides the question of estoppel, that, in my judgment, is sufficient to sustain the affirmative finding of the Chancellor which is to the effect that there was nothing shown in this case sufficient to invalidate the husband's pledge of the ring which is the subject of this lawsuit. See: Brooks v. Laurent, 98 Fed. 647, text 656.

It seems to me that the majority opinion in this case not only fails to give effect to the previous holdings of this Court on the question of estoppel, but runs directly counter to the doctrine that this Court has announced as applicable to the analogous case wherein the wife attempts to set up that she was induced to execute a real estate mortgage by fraud and deception practiced on her on the part of her husband, but in which fraud and deception the mortgagee is not shown to have participated. In cases affecting real estate, this Court has held that even where fraud and deception has been in fact practiced upon the wife by the husband to induce the wife to execute a mortgage on her property, that such defense cannot avail the wife unless it appears that the mortgagee either knew of, or participated in, such fraud and deception. See Smith v. Commercial Bank, 77 Fla. 163, 81 Sou. Rep. 154, 4 A. L. R. 862.

By reversing the decree in this case, it seems to me that we necessarily declare in this State the remarkable doctrine

that while a wife cannot set up fraud and duress practiced upon her by her husband to induce her to join in a real estate mortgage, where the mortgagee is innocent of participation therein and does not know of it, that she can nevertheless with perfect ease maintain the claim that a transfer of personal property made by her to her husband and executed by her by manual delivery of same to him, is invalid because of some alleged secret fraud or deception practiced by the husband upon her as the wife, notwithstanding the pledgee who takes from the husband in good faith and for a valuable consideration did not participate therein, nor was he apprised of it, directly or by circumstances. I cannot agree to any such declaration of law in this State.

I think the decree appealed from should be affirmed.