29 B.R. 841 (1983)
In the Matter of Leonard & Joanne WARSH, Debtors.
David GORMAN, as Interim Trustee, etc., Plaintiff,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants and Third-Party Plaintiffs,
v.
Leonard WARSH, Third-Party Defendant.
Bankruptcy No. 80-533, Adv. No. 81-343.
United States Bankruptcy Court, M.D. Florida, Tampa Division.
April 15, 1983.
*842 Rick B. Levinson, Tampa, Fla., for plaintiff.
Wm. Fletcher Belcher, Merrill, Lynch & Marvin Ellis, St. Petersburg, Fla., for defendant, Merrill Lynch & Marvin Ellis.
Richard Nelson, St. Petersburg, Fla., for defendant Landmark Union Trust Bank.
Orrin M. Gowen, St. Petersburg, Fla., for defendant, Century First Nat. Bank.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION
ALEXANDER L. PASKAY, Chief Judge.
THIS IS a Chapter 7 case commenced by Leonard Orville Warsh and Joanne Purdue Warsh, his wife, who filed their Voluntary Petition for Relief. The matter under consideration is a complaint filed by David Gorman (the Trustee) who originally named as defendants, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), Marvin G. Ellis (Ellis) and Century First National Bank of Pinellas County (Century First) and Landmark Union Trust Bank of St. Petersburg, N.A. (Landmark).
The complaint filed by the Trustee sought recovery against the two banks, Century First and Landmark, in addition to the other named Defendants. The counts against both Banks were dismissed.
This left for consideration the validity and viability of the claim of the Trustee against Merrill Lynch and Marvin G. Ellis. Merrill Lynch also filed a third-party complaint against Leonard O. Warsh, one of the Debtors, alleging that in the event the Trustee is entitled to recover against Merrill Lynch, Merrill Lynch should have a right to recover against Leonard O. Warsh. The original Count II of the complaint was dismissed and Count IV, which applied only to the dismissed Defendants, was also dismissed. In light of the foregoing, only the claims for relief set forth in Counts I and III of the Complaint remain for consideration.
The claim of the Trustee set forth in Count I of the Complaint is based on the allegation that Merrill Lynch, and particularly Marvin Ellis, the account executive of Merrill Lynch, were guilty of fraud in connection with the sale of certain stocks owned by Joanne Warsh, one of the Debtors, which was sold by Merrill Lynch and by Marvin Ellis, without any authorization or knowledge of Joanne Warsh.
The claim of the Trustee set forth in Count III is based on the allegation that the sale constituted a "wrongful interference or deprivation of property" (sic) of Joanne Warsh by Merrill Lynch and Marvin Ellis.
The facts relevant and germane to the resolution of the remaining issues as developed at the final evidentiary hearing can be summarized as follows:
Leonard O. Warsh and Joanne P. Warsh, his wife, (the Debtors) were the owners of a number of shares in a corporation known as Monogram Products, Inc., a Florida corporation. As a result of a corporate merger in 1972, the Debtors exchanged their Monogram shares for 15,000 shares of Cole National Corp. (Cole). In 1976, Cole declared a stock dividend and as a result, the Debtors received an additional 1,500 shares of Cole stock. Thus, the total holdings of the Debtors came to 16,500 shares of Cole stock. The shares in question were registered as follows: 7,425 shares were registered in the name of Joanne Warsh, represented by eight separate stock certificates; 7,425 were registered in the name of Leonard O. Warsh; and 1,650 shares were registered in their joint names as joint tenants with right of survivorship. All shares held by the Debtors contained the following restrictive legend:
"THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE SOLD OR *843 OTHERWISE DISPOSED OF EXCEPT PURSUANT TO THE REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER, AND UPON COMPLIANCE WITH THE CONDITIONS AND RESTRICTIONS SPECIFIED IN A CERTAIN LETTER AGREEMENT IN THE FORM ANNEXED S EXHIBIT B TO THE AGREEMENT AND PLAN OF REORGANIZATION DATED JULY 13, 1972, BETWEEN COLE NATIONAL CORPORATION, M.P. MERGER CORP., AND MONOGRAM PRODUCTS, INC., A COPY OF WHICH MAY BE INSPECTED AT THE PRINCIPAL OFFICE OF COLE NATIONAL CORPORATION, 577 GRANT AVENUE, CLEVELAND, OHIO, 44105."
It is without dispute that Leonard O. Warsh had at all times full control of all the stock certificates and had complete control and power over the stock certificates in question and not only those which were held by him alone, but also those which were registered in his and his wife's names, and also the 7,425 shares which were registered solely in the name of his wife, Joanne Warsh.
During the time relevant to this controversy, Leonard O. Warsh had several loan transactions with several financial institutions. From time to time, Leonard Warsh delivered the stock certificates registered in the name of his wife to lending institutions as collateral, and she routinely executed the necessary pledges or security agreements. At no time did Joanne Warsh demand possession of her certificates or protest the unrestricted dominion and control exercised by her husband over the stock certificates.
It further appears that Joanne Warsh entrusted the chore of conducting her financial affairs to her husband to the extent that she would not even open or read the business mail addressed and delivered to her. It further appears from the record that she maintained several security accounts with several brokerage firms, including a previous account held by her and in her name only in Michigan, also a joint account with her husband with Merrill Lynch in Michigan. This account was ultimately transferred to a St. Petersburg office of Merrill Lynch in 1970. As a matter of fact, she also opened an account in her own name in Merrill Lynch's office in St. Petersburg and also maintained an account in her own name in the Clearwater office of another brokerage firm.
The first sale of Cole stocks occurred in December of 1976 when Leonard O. Warsh directed Marvin Ellis, the account executive of Merrill Lynch, to sell 4,000 shares registered in his name alone. The second sale occurred in July 1977 when he again directed Ellis to sell an additional 2,425 shares which were also registered to his name alone. Both sales were processed through Leonard Warsh's individual account. Inasmuch as these were legend stocks, i.e. they could not be traded in the open market, they were sold subject to the requirement of Rule 144 of the Securities and Exchange Commission (SEC). This Rule requires that a seller file a notice of the proposed securities sale (Form 144) with the SEC, and that the broker and the seller furnish letters or written statements containing certain specified information relative to the sale and otherwise indicating that both the seller and the broker fully complied with the requirements of Commission Rule 144. In some instances, separate advisory opinions of counsel is required in order to fulfill the requirements of Commission Rule 144. None of these transactions are involved in this immediate controversy, but merely furnish the background to the crucial sale which is the center of this controversy.
Sometime thereafter, Leonard Warsh instructed Ellis to sell all the remaining Cole shares, to wit: 7,425 shares, registered in the name of Joanne Warsh, 1,000 shares registered in the name of Leonard O. Warsh and 1,650 shares registered in the name of Leonard O. Warsh and Joanne Warsh as joint tenants with right of survivorship. In order to complete this transaction, Ellis requested and obtained the technical information on January 6, 1978, from Leonard O. *844 Warsh and learned for the first time that these stock certificates were held by the Century Bank and Landmark Bank as security for loans obtained by Leonard Warsh.
The facts surrounding the actual consummation of this transaction were in dispute, although some emerged from the record established at the trial are basically without dispute and can be summarized as follows: First, there is no question that on January 9, 1978, Joanne Warsh signed and delivered a letter to Landmark authorizing Landmark to deliver her stock certificates to Merrill Lynch and giving instructions to Ellis concerning the application of the proceeds of the sale. In addition, there is no question that she executed a notice of proposed sale of securities (Form 144) indicating her consent to sell the 7,425 shares of Cole stock owned by her. A letter executed by her as seller and directed to Merrill Lynch contained a specific reference to the execution of her order to sell 7,425 shares of Cole stock. In addition, she also executed 8 separate stock powers which were to be attached to her stock certificates. There is no question that her signatures on these documents are genuine and it has been admitted to be genuine by the Plaintiff.
These documents, together with the stock certificates, were actually delivered to Ellis and the delivery of the stock certificates and the authorization to sell them were discussed extensively by telephone with representatives of both Banks.
The documentation for the sale of the 7,425 shares of Cole stock registered in the name of Joanne Warsh was executed over a period of 14 days beginning on January 9, 1978 and ending on January 25, 1978. During this period, Merrill Lynch mailed 22 separate confirmations of these transactions to Joanne Warsh. In addition, the statement of account mailed to Joanne Warsh by Merrill Lynch for the months of January and February, 1978 clearly reflected that the shares had been received and sold and also contained a request that she advise the account executive immediately if any discrepancy or anything incorrect appeared on the statement. While Mrs. Warsh stated that she had no specific recollection of having received any written confirmations or any statements of account during the period in question, it is without dispute that she wrote a letter of inquiry concerning her shares to Mr. Ellis in 1979 after attempting to reach Mr. Ellis by the telephone on at least two occasions without success. There is no evidence in this record that she did, in fact, write these letters; no copies of the letters were offered into evidence by the Trustee and Mr. Ellis denied ever receiving such correspondence.
As noted earlier, the Cole shares owned by Mrs. Warsh were pledged as collateral for certain joint loan obligations upon which both she and her husband were personally liable. The letter of authorization admittedly signed by Mrs. Warsh, dated January 9, 1978, stated specifically that the proceeds of the sale of the stock should be made payable jointly to the Landmark and to her. The letter of transmittal from Landmark to Merrill Lynch which accompanied the stock certificates provided for "delivery versus payment." There was also a letter of transmittal by Century to Merrill Lynch that since these securities were held as collateral for loans, the proceeds were to be sent to "this office." It is without dispute that when Merrill Lynch received the sale proceeds of the Cole stock, it paid the proceeds to Century and to Landmark respectively, which payments were in turn credited to the account of Joanne Warsh. The fact of the matter is that the proceeds of the sale of the Cole stock were then applied by the Banks to the account of the joint obligations of Joanne Warsh and her husband and the balance of the proceeds was deposited in Mrs. Warsh's checking account, in the joint checking account maintained by Mr. and Mrs. Warsh and also in their joint savings account.
It further appears that the transfer agent of Cole refused to transfer the shares to the purchasers until it was furnished with a written opinion of counsel concerning the propriety of the transaction, especially the compliance with the applicable securities laws and especially with Rule 144.
*845 Because the Debtors failed to furnish or procure such an opinion from counsel and because they failed to assist Merrill Lynch, the shares sold by Merrill Lynch in early 1978 were never technically transferred and remained in their names until mid 1980. As the result, the Debtors continued to receive the quarterly dividends from Cole between early 1978 and 1980 and at least in one instance received a dividend of additional shares of Cole Consumer Products, Inc., a subsidiary of Cole National, which was a stock dividend issued by Cole. Be that as it may, there is no question that 11 dividend checks for the first, second, third, and fourth quarters of 1978 and the first quarter of 1979 were endorsed by Joanne Warsh and returned to Merrill Lynch. In addition, a tax certificate dated March 15, 1978 which represented 3,712 shares of Cole Consumer Products, Inc. issued to Joanne Warsh because of her record ownership was returned to Merrill Lynch with a stock power executed by Joanne Warsh. The genuiness of her endorsements is without dispute. In addition, all credits for the returned dividend checks and for the Cole Consumer Products stock certificates were clearly shown on the monthly statements of account furnished by Merrill Lynch to Mrs. Warsh.
Based on the foregoing, it is clear, and the conclusion is inescapable, that she fully recognized that her shares in Cole were, in fact, properly sold; that she no longer has any interest in them even though they remained technically in her name and even though they were not sold by her, but ostensibly sold at the instruction and direction of her husband allegedly without any express authorization and direction.
It further appears that the Debtors did not report any dividend income on their individual tax returns filed with the Federal Government for the year 1979 or 1980, although they received substantial dividends on the Cole stock during that same period. In the Statement of Affairs and Schedule of Debts and Liabilities filed by Joanne Warsh in connection with her Petition for Relief under Chapter 7, she did not schedule any of the Cole stock as an asset, neither did she schedule any possible claim against Merrill Lynch. The joint loan obligations to Century and Landmark which had been paid with the proceeds of the sale of the stock were not shown on her Schedule of Liabilities.
It is the contention of the Trustee that the 7,425 shares were sold by Merrill Lynch without Mrs. Warsh's authorization and, therefore, the Trustee should be entitled to attack the transfer and recover the value of the stock on the theory of conversion from Merrill Lynch and from the account executive.
On the other hand, it is Merrill Lynch's contention that Mr. Warsh was fully authorized to handle the accounts involving not only the stocks registered in his name, the stocks registered in their joint names, but also the stocks registered in his wife's name alone, and therefore, Merrill Lynch proceeded in good faith with the understanding of full authorization to complete the sale transaction of the stock in question pursuant to the direction of Mr. Warsh.
Considering the totality of the circumstances and the evidence as developed at the final evidentiary hearing, this Court is satisfied that Mrs. Warsh effectively made her husband her agent with full power to deal with her stock holdings, especially her affairs concerning the Cole stock and, if not directly, she impliedly authorized her husband to act as her agent, and the shares in question were sold pursuant to that authorization. Therefore, the sale cannot be attacked and neither Ellis nor Merrill Lynch can be held liable.
Even assuming, but not admitting, that there was no initial authorization granted by Mrs. Warsh to deal with the stocks in question, it is clear from this record that Mrs. Warsh knew of the transaction and that she ratified the transaction by acquiescence, because she failed to object after receiving 22 written confirmations and periodic statements of account by accepting and retaining the benefits of the sale and by permitting the Banks to use the proceeds to reduce her secured obligations *846 owed to the Banks. She acknowledged her lack of interest in the stock by surrendering post-sale stock dividends to Merrill Lynch on her Statement of Affairs and Schedule of Assets filed in this proceeding and by failing to report any Code dividend as income to her on her 1979 and 1980 income tax returns. In light of the foregoing, Mrs. Warsh should now be estopped to deny that she authorized the sale.
The Supreme Court of Florida is a very analogous situation concerning the husband's authority to act on behalf of his wife, stated principles which equally govern the present controversy:
"Whatever the social relations between a husband and wife may be, so long as she permits him to occupy, manage, and control her separate statutory property, he is her agent. This agency terminates only when she takes the management of her property out of his hands, and personally assumes it or appoints a new agent."
"The doctrine that, even in the absence of statute, the wife may appoint her husband as her agent to manage her separate property, seems too well settled to require a citation of authority . . . It is equally well settled that this appointment may be proved by such evidence and inferences as are requisite or admissible in proving any other agency."
"When a married woman knowingly permits her husband to manage or control her property, or allows him so to deal with it as to induce others to believe that he is acting as her authorized agent, such facts are sufficient to establish the agency in favor of persons who deal with him in such belief."
Craft v. American Agricultural Chemical Co., 81 Fla. 55, 87 So. 41, 42 (1921). The same principles were recently reaffirmed in Parrish v. Swearington, 379 So.2d 185, 186 (Fla. 1st DCA 1980) (per curiam), See also, 25 Fla.Jur.2d Family Law, § 312 (1981).
From the foregoing, it appears clearly to the satisfaction to this Court that the transaction involving the sale in the Cole National stock registered and held by the Debtor, Joanne Warsh, was either a fully authorized transaction or if not, she is estopped to challenge the validity of the transfer. Therefore, the Trustee's claim for relief against Merrill Lynch and against Marvin G. Ellis cannot be recognized and must be rejected.
This is clearly a related matter as defined by the Emergency Local Rule (d)(3)(A) and for this reason, this Court cannot enter a final dispositive order in this case and this Findings of Fact, Conclusions of Law and Memorandum Opinion with a separate Final Judgment shall be transmitted pursuant to Emergency Local Rule (d)(3)(B) to the District Court for the purpose of entering a dispositive order.